F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIEA POWELL,

Defendant - Appellant.

No. 04-1472
(D. Ct. No. 04-CR-70-M)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

Following a two-day jury trial, Defendant-Appellant Mariea Powell was found guilty of submitting a materially false loan application to the Department of Housing and Urban Development ("HUD") in violation of 18 U.S.C. § 1001. On appeal, Ms. Powell argues that there was insufficient evidence to support her conviction, that the District Court erroneously admitted into evidence documents containing inadmissible hearsay, and that admitting those documents violated the Confrontation Clause. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

In 1999, Ms. Powell decided to purchase a home in Denver and met with real estate agent LaDonna Mullins to execute the contract. At that time, Ms. Mullins was involved in an extensive conspiracy to defraud the federal government by obtaining loans insured by the Federal Housing Authority ("FHA") with false credit information. As part of the scam, real estate agents and loan officers paid Roderick Wesson to obtain false social security numbers and to prepare fictitious IRS W-2 forms and pay stubs for potential homebuyers. Mr. Wesson would list fictitious entities as employers on the forms and pay stubs, including "W&W Enterprises," "Neighborstat," and "Comp Systems." The fraudulent documents were then used in support of a homebuyer's application for an FHA-insured loan, which, if approved, resulted in a commission or fee paid to the real estate agent or loan officer. In this way, each member of the scam profited—Mr. Wesson was paid a fee by the real estate agent or loan officer, the agent or officer made money based on a loan that would otherwise not have been approved, and the homebuyer secured financing for which she did not qualify.

Ms. Mullins's daughter, Marcel Smith, was a loan officer. Upon Ms. Mullins's referral, Ms. Smith assisted Ms. Powell in filling out a loan application form for the 1999 house purchase; the application was then sent to FHA for approval. On the application, which Ms. Powell signed, "Comp Systems" is listed as Ms. Powell's employer for the last three years and states her salary to be $2,100 per month. Forged W-2 forms, submitted in conjunction with the application, also state that her employer is Comp Systems and that

she earns $2,100 per month. The application further indicates that Ms. Powell receives $1,400 per month from a second job, making her total monthly salary $3,500.

In addition, the application lists a $3,000 "gift fund" as Ms. Powell's only asset other than a credit union account of $146. The "gift" was confirmed by a letter to Ms. Powell from her friend, Harold Sawyer, and was submitted to FHA in support of Ms. Powell's loan application. The letter states that Ms. Powell is Mr. Sawyer's fiancé and that he is giving her $3,000 to enable her to pay the closing costs associated with the home purchase.

The application also indicates that Ms. Powell was paying Mr. Sawyer a monthly rent of $600. Again, Ms. Powell sought documentation from Mr. Sawyer on this point. She asked him, and he agreed, to sign a "verification of rent" form purporting to verify that Ms. Powell had paid to Mr. Sawyer a monthly rent of $600 from 1994–1999. The form was submitted as part of Ms. Powell's loan application.

The application was ultimately approved by HUD, and Ms. Powell received FHA mortgage insurance that permitted her to obtain financing for the home. In 2003, however, HUD began investigating whether the application was fraudulent, and in 2004, Ms. Powell was charged with violating 18 U.S.C. § 1001, which prohibits a person from making a false statement to a federal agency.

At trial, testimony established that Comp Systems was a bogus company conjured up by Mr. Wesson and that Ms. Powell never worked for such a company. Accordingly, her monthly income was established to be only $1,400. In addition, Mr. Sawyer testified

that he remembered signing a letter at Ms. Powell's request, but he did not recall that the letter included anything about a $3,000 gift. He further testified that he never gave Ms. Powell $3,000. Indeed, at closing, Ms. Powell "paid" the $3,000 in closing costs with forged money orders. Evidence at trial also demonstrated that Ms. Powell lived with Mr. Sawyer for a few years around 1998 and 1999 and never paid him any rent at all, directly contradicting the statement on the loan application that she had been paying him $600 per month for the last five years. A HUD compliance officer testified that HUD would not have insured the loan without the false Comp Systems employment data or the attached gift letter purportedly from Mr. Sawyer.

Ms. Powell was convicted and sentenced to two years' probation. On appeal, she argues that the evidence did not support her conviction, that the District Court erroneously admitted into evidence documents containing inadmissible hearsay, and that admitting those documents violated the Confrontation Clause.

## II. DISCUSSION

A.    Sufficiency of the Evidence

In reviewing the sufficiency of the evidence supporting a jury verdict, this Court "must review the record de novo and ask only whether, taking the evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Platte*, 401 F.3d 1176, 1180 (10th Cir. 2005). In doing so, we do not "reassess the jury's conclusions about the weight of the

- 4 -

evidence." *Id.* Under this standard, a jury verdict will stand unless no rational trier of fact could have reached that verdict. *United States v. Serrata*, 425 F.3d 886, 895 (10th Cir. 2005).

It is a violation of 18 U.S.C. § 1001(a)(3) to knowingly and wilfully make a false document with respect to any matter arising within the jurisdiction of any of the branches of government knowing that the document contains a materially false statement. *See* 18 U.S.C. § 1001(a)(3). In this case, the jury instructions required the Government to prove that: (1) Ms. Powell made a false loan application; (2) Ms. Powell knew the application contained a false statement; (3) Ms. Powell made the application knowingly and wilfully; (4) the false statement was material; and (5) the application was a matter within the jurisdiction of HUD.[1] Apparently conceding that her loan application is within HUD's jurisdiction and contains materially false statements—namely, that she worked at Comp Systems and earned $2,100 per month, had $3,000 in assets as a result of Mr. Sawyer's "gift," and paid rent of $600 per month—Ms. Powell simply argues that the Government failed to prove the first two elements because there was no evidence that the false statements were on the application when she signed it. Ms. Powell points out that no person witnessed the signing of the application and that there was no evidence that Ms. Powell had prepared the document herself. Ms. Powell argues that without such

---

[1]These instructions are not contested on appeal and are consistent with the statute and our case law. *See* 18 U.S.C. § 1001(a)(3); *United States v. Finn*, 375 F.3d 1033, 1037 (10th Cir. 2004).

evidence, the Government failed to prove that she made a false loan application. We disagree.

Although there is no direct evidence as to what information was contained in the application at the time Ms. Powell signed it, substantial circumstantial evidence supports the jury's conclusion. Specifically, the jury reasonably could determine that Ms. Powell actively solicited the false information contained in the loan application. This, in turn, would support the inference that Ms. Powell knew the application contained the false statements at the time she signed it or knew they would be inserted prior to the application being submitted to HUD. *Cf. United States v. Irwin*, 654 F.2d 671, 676 (10th Cir. 1981) (upholding jury verdict under § 1001 when evidence showed that the defendant "made the false statement or caused it to be made"), *overruled on other grounds by United States v. Daily*, 921 F.2d 994 (10th Cir.1990).

The jury heard evidence, for example, that prior to signing the loan application, Ms. Powell requested Mr. Sawyer to sign a gift letter conveying to Ms. Powell $3,000 to use toward the closing costs associated with the home purchase. There was also evidence from which the jury could infer that Ms. Powell changed the contents of the letter to reflect the donation after Mr. Sawyer had signed it. Further, the jury heard evidence that Mr. Sawyer never actually made such a "gift." Nevertheless, the loan application, which was signed and dated by Ms. Powell, states that Ms. Powell has $3,000 in "gift funds" as her only substantial asset. Based on the foregoing evidence, the jury rationally could conclude that Ms. Powell knew the application contained that false statement at the time

she signed it or that the statement would be included at a later time.

Similarly, the Government demonstrated that Ms. Powell requested Mr. Sawyer to sign a form verifying that from 1994–1999 she had paid him monthly rent of $600. Mr. Sawyer did not recall the contents of that document but testified that Ms. Powell lived with him during that time and therefore paid him no rent at all. Another witness, a special agent with HUD's Office of Inspector General, testified that Ms. Powell had admitted to him that her signature was on the form but that she never paid rent to Mr. Sawyer. As noted, however, the loan application states that Ms. Powell's current monthly rent is $600. Again, the jury could conclude that because Ms. Powell solicited false information that was ultimately included in the loan application, the loan application contained the information when she signed it or that she knew it would be inserted sometime later.

Finally, had the false statements not appeared in the application at the time Ms. Powell signed it, or had Ms. Powell not known they would be inserted at a later date, Ms. Powell would have submitted to HUD an almost blank application. No primary place of employment would have been shown. The application would have indicated that Ms. Powell did not pay a monthly rent or mortgage. The application would have listed no assets other than a credit union balance of $146. Ms. Powell's monthly income would have been listed as only $1,400 per month, while the proposed monthly mortgage payment was over $1,100. This too, supports the jury's determination that Ms. Powell knew the application contained, or would contain, the false statements. Accordingly, we conclude that the evidence was sufficient for the jury to return its guilty verdict.

B.    Hearsay

Ms. Powell next argues that the District Court erred in admitting into evidence the

loan application, an addendum to the loan application, the verification of rent form, Ms.

Powell's credit report, a settlement statement, the deed of trust, and the warranty deed.

She contends that the documents contain prejudicial hearsay statements.  Ms. Powell,

however, has provided this Court with a copy of only the loan application.  It is

well-established in this Circuit that when the record before us is not sufficient to permit

an assessment of an appellant's claims of error, we must affirm.  *See, e.g., Scott v. Hern*,

216 F.3d 897, 912 (10th Cir. 2000).   Since Ms. Powell contests the District Court's

hearsay rulings but does not include in the record many of those documents contended to

contain hearsay, our appellate review is necessarily constrained and we therefore affirm

the District Court's rulings with respect to each document not contained in the record.[2]

We do, however, have a copy of the loan application and will consider whether the

District Court abused its discretion in admitting it into evidence over Ms. Powell's

hearsay objection.  *See United States v. Chatman*, 994 F.2d 1510, 1515 (10th Cir. 1993).

We agree with the District Court that the application is not inadmissible hearsay because

it was not offered for the truth of the matter asserted, but rather to show what information

---

[2]While we do not have the documents before us, it appears that they were all
admitted under the business records exception to the hearsay rule.  *See* Fed. R. Evid.
803(6).  We note that the District Court repeatedly and appropriately instructed the jury to
consider each of these documents only as evidence of what HUD relied on when
approving Ms. Powell's loan and not to construe statements contained therein as
necessarily true.

HUD relied on to approve Ms. Powell's loan. *See* Fed. R. Evid. 801(c). Moreover, the District Court repeatedly gave the jury a limiting instruction to this effect.

Nevertheless, Ms. Powell argues that a statement within the application is a prejudicial hearsay statement. Specifically, the application states that "[t]his application was taken by: [check one] face-to-face interview, by mail, [or] by telephone," and the box next to "face-to-face interview" is checked. Ms. Powell contends that through the admission of this statement, Ms. Smith was permitted to testify that the false information had come directly from Ms. Powell. Ms. Powell did not raise this objection to the District Court. Moreover, the Government neither directed the jury's attention to the statement, nor argued that the checked box indicated that the application was completed during a face-to-face interview. On the contrary, it was counsel for Ms. Powell who highlighted that portion of the application during cross-examination of a Government witness. We therefore decline to consider this claim on appeal. *See United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) (stating that an error invited by defense counsel is harmless).

C.   Confrontation Clause

Finally, Ms. Powell argues that introduction of the documentary exhibits violates the Confrontation Clause of the Sixth Amendment, which prohibits the admission into evidence testimonial out-of-court statements unless the witness is shown to be unavailable and the defendant had an earlier opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). Counsel for Ms. Powell admits, however, that he did not make such an objection at trial. Where a Confrontation Clause

objection is not preserved, this Court has refused to address the constitutional issue unless it was "plain error for the district court to fail to raise the issue sua sponte." *United States v. Solomon*, 399 F.3d 1231, 1237–38 (10th Cir. 2005).

An error is "plain" when it is clear or obvious under current and well-settled law. *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir.2000). It is far from obvious that any statement in these routine financial and real estate documents should be considered "testimonial." *See Crawford*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"); *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005) ("[W]e hold that a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."). We therefore do not consider this argument further.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

- 10 -