FILED
United States Court of Appeals
Tenth Circuit

June 13, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LINDA CARNAGIE,

Defendant-Appellant.

No. 09-1314
(D.C. No. 1:04-CR-00463-MSK-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Linda Carnagie entered into a scheme to defraud the U.S. Department of

Housing and Urban Development ("HUD") by using false information to obtain

loans insured by the Federal Housing Administration ("FHA"). For this, a jury

convicted Ms. Carnagie of several counts of making false statements to HUD (and

aiding and abetting thereof). *See* 18 U.S.C. §§ 2(b) and 1001(a)(3). Ms. Carnagie

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

now claims there was insufficient evidence to convict her of many of those counts, and she also challenges the length of her sentence. Finding none of these arguments persuasive, we affirm both her conviction and sentence.

I

The basic thrust of the fraudulent scheme at issue in this case is as follows. For a fee, Roderick Wesson would provide false documents, including fake pay stubs and fake Social Security numbers, to persons with bad or no credit to help them qualify for an FHA-insured loan. To facilitate his business, Mr. Wesson worked with various loan officers and real estate agents. After Mr. Wesson or the real estate agents located prospective home buyers with credit problems, Mr. Wesson would provide them with false documents. The loan officer would, then, use these fraudulent documents to support the buyer's application for an FHA-insured loan, which, if approved, resulted in a commission or fee paid to the real estate agent or loan officer. In this way, each member of the scheme profited — Mr. Wesson was paid a fee by the real estate agent or loan officer, the agent or loan officer made money based on a loan that would otherwise not have been approved, and the homebuyer secured financing for which she did not qualify.

Ms. Carnagie was one of the many people who used Mr. Wesson's services to secure an FHA-insured loan to purchase her own home. After doing so, Ms. Carnagie, herself a loan officer, joined Mr. Wesson's conspiracy. Between February and September 2000, Ms. Carnagie's mortgage company submitted a

number of applications for FHA-insured loans that contained false information. When authorities cottoned on to this scheme, Ms. Carnagie and thirty-three other defendants were indicted. Of relevance here, Ms. Carnagie was charged with twelve counts of making and using materially false loan application packages and supporting documentation that were submitted to HUD (and aiding and abetting thereof). *See* 18 U.S.C. §§ 2(b) and 1001(a)(3).

## II

Before us, Ms. Carnagie argues there was insufficient evidence for the jury to find that she was involved in making or using many of those fraudulent loan applications — specifically, the applications at issue in Counts 42-48 and 50-52 of the indictment.[1] She doesn't deny that those applications contained false information. Neither does she dispute that her typewritten name appears on almost all of them. Instead, she stresses that she never *signed* those applications, and this, she claims, proves she was not involved in the charged fraud.

Because Ms. Carnagie did not raise this argument in her motion for acquittal, we review it only for plain error. *See United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003) (reviewing for plain error where Fed. R. Crim. P. 29 motion raised a different issue). And doing so, we discern none.

---

[1]     Ms. Carnagie also challenges the sufficiency of the evidence as to Count 54. But she was acquitted of that count, and so we need not discuss it here.

In reviewing challenges to the sufficiency of the evidence supporting a jury's verdict, we ask whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found as it did. *United States v. Rakes*, 510 F.3d 1280, 1284 (10th Cir. 2007). Mindful of this standard, we find the evidence amassed against Ms. Carnagie more than sufficient to prove that she either made or aided and abetted others in making the materially false loan applications for which she was convicted. *See* 18 U.S.C. §§ 2(b) and 1001(a)(3); *United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997) (aiding and abetting requires a defendant to "willfully associate himself with the criminal venture and seek to make the venture succeed through some action of his own"); *United States v. Powell*, 164 F. App'x 720, 723 (10th Cir. 2006) (unpublished).

Ms. Carnagie admits that she acted as the loan officer on each of the loans involved in the challenged counts. *See* Opening Br. at 12. And two employees at her same company testified that the loan officer is generally responsible for preparing the loan application. The jury also learned from Mr. Wesson that Ms. Carnagie knew all about his scheme to defraud HUD and that she agreed to process loan applications using the false information he created for buyers. And Mr. Wesson further testified that he had prepared the false documents used in each of the false loan applications for which Ms. Carnagie was convicted. In fact, several of the prospective home buyers who made those applications testified to

-4-

delivering their false documents from Mr. Wesson to Ms. Carnagie, and some also recounted conversations they had with Ms. Carnagie that indicated she was fully aware their documents were false. One home buyer even told the jury that, upon discovering his poor credit, Ms. Carnagie referred him to Mr. Wesson. In light of all this, we find the evidence more than sufficient for the jury to find that Ms. Carnagie was involved in making the many fraudulent loan applications for which she was convicted.

III

Finally, Ms. Carnagie argues that the district court erred when it declined to grant her request for variance and gave her a higher sentence than certain of her co-conspirators. We review challenges to a district court's sentencing decision for reasonableness by asking whether the sentencing court abused its discretion. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). Under our case law, a sentence falling within the range suggested by the sentencing guidelines, like Ms. Carnagie's, is presumed to be reasonable. *Id.* To overcome that presumption and demonstrate that the district court abused its discretion, Ms. Carnagie must show that the court rendered a judgment that "exceeded the bounds of . . . . rationally available choices" before it, given "the facts and the applicable law." *Id.* (internal quotation omitted). This, she has failed to do.

Ms. Carnagie claims she has medical and psychiatric problems that cannot be treated by prison doctors. And so, she says, the court should have sentenced

her to probation, not jail.  But the district court disagreed with her assessment, finding that the Bureau of Prisons could adequately treat her various conditions. And we can't say the court abused its discretion in declining to sentence her to probation.  Finally, Ms. Carnagie points us to the disparity between her sentence and those of several of her co-conspirators.  But we have repeatedly held that a "decision to accept responsibility and assist the government does not create an unwarranted disparity under § 3553(a)(6)," *United States v. Haley*, 529 F.3d 1308, 1312 (10th Cir. 2008), and that is exactly what occurred here.  The co-defendants that Ms. Carnagie references in her brief all chose to cooperate with the government; Ms. Carnagie did not.  To the extent the district court provided her co-defendants more favorable sentences, that was not the product of irrational caprice but was instead the result of a rational, reasonable accommodation to those who, unlike Ms. Carnagie, chose to accept responsibility for their roles in the fraudulent scheme and help the authorities.

Ms. Carnagie's conviction and sentence are affirmed.


ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

-6-