FILED
United States Court of Appeals
Tenth Circuit

December 18, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GARY DEWAYNE McCOMB, JR.,
a/k/a "Buddy,"

      Defendant-Appellant.

No. 07-5003

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. CR-06-33-P)**

---

Stephen J. Knorr, Tulsa, Oklahoma, for Defendant-Appellant.

Neal B. Kirkpatrick, Assistant United States Attorney (David E. O'Meilia, United States Attorney, and Kevin Danielson, Assistant United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HENRY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

Before being sentenced on drug charges, Gary Dewayne McComb, Jr. suffered a stroke that left him with severe mental and physical impairments. At sentencing, Mr. McComb argued that his condition – including the medical

attention he required and the unlikelihood he would prove a danger to others or repeat his criminal conduct – made him a candidate for a downward departure or a variance. The district court disagreed and sentenced Mr. McComb to 135 months in prison, at the bottom of the range suggested by the Sentencing Guidelines. Mr. McComb now appeals, challenging both the procedural and substantive reasonableness of his sentence. While the district court's choice of sentence was perhaps not the only one permissible in this case, we cannot say that the explanation it offered or the result it reached represent an abuse of its discretion. Accordingly, we affirm.

I

Together with six co-defendants, Mr. McComb participated in an extensive, multi-year conspiracy to distribute methamphetamine in Oklahoma. After being indicted in 2006 on eight counts of possession with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Mr. McComb eventually agreed to plead guilty to a single count. At sentencing, Mr. McComb's offense level was calculated to be 33; together with his category I criminal history, this led to a recommended Guidelines sentence of 135 to 168 months' imprisonment. Mr. McComb did not challenge the calculation of his Guidelines' range as improper, but did file two motions seeking a lower sentence – one requesting a downward departure based on Sections 5K2.0, 5H1.3, and 5H1.4 of the Guidelines themselves, and another seeking a variance from the Guidelines on the basis of

the factors found in 18 U.S.C. § 3553(a).[1] While formally distinct motions, they rested on the same factual predicate. Mr. McComb argued that his failing physical and mental health, brought on by a severe stroke that he suffered after the criminal conduct in question but before his arrest, made a sentence of 135 to 168 months unreasonable, whether viewed through the prism of the Guidelines alone or in light of all the Section 3553(a) factors.

In addition to receiving and considering Mr. McComb's written motions, the court conducted an evidentiary hearing, at which Mr. McComb called four family members to testify on his behalf. Each witness discussed the stroke's effects on Mr. McComb, testifying that he was unable to think coherently; he had memory problems; his speech was slurred; the motor skills of the right side of his body were severely impaired; he had trouble performing simple tasks, such as shaving, dressing, or feeding himself; and, for purposes of Social Security, he had been deemed completely disabled. The witnesses also related that, by the time of sentencing, Mr. McComb had been drug-free for some time. Mr. McComb argued that the sum of these circumstances – suggesting his vulnerability in a prison

---

[1] "[W]hen a court reaches a sentence above or below the recommended Guidelines' range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a 'departure.' When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a 'variance.'" *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007).

setting, his near-constant need for care, and the fact that he presented little risk of recidivism – augured in favor of a below-Guidelines' sentence.

For its part, the government called as a witness an Alcohol, Tobacco, Firearms, and Explosives Agent and polygraph examiner, Michael Bryant, who had spent four or five hours interviewing and observing Mr. McComb. Agent Bryant testified that, while Mr. McComb was initially unfocused, inattentive, and not fully cognizant, he became more attentive and focused throughout the meeting, his speech cleared, and he was knowledgeable about and fully able to discuss his medical condition. At one point, Mr. McComb became agitated and left the room. Agent Bryant noted that, while Mr. McComb had appeared unsteady when he arrived and unable to use his right hand, he now walked quickly and steadily and opened the door with his right hand. Other officers also apparently saw Mr. McComb use his right hand to make a cell phone call.

After hearing testimony and considering the parties' written submissions, the district court rejected Mr. McComb's requests for a departure or variance and imposed a sentence of 135 months, at the low end of the Guidelines' suggested range. In doing so, the court related several factors that influenced its thinking.

First, the court stressed the seriousness of Mr. McComb's offense and its wish to avoid disparities in sentencing between Mr. McComb and his co-defendants in this case, as well as with others convicted of similar offenses.

Second, the court found that Mr. McComb's condition "is not nearly as extreme as he would lead this court to believe. Specifically, the defendant was able to drive himself from his home [in Oklahoma] to Arkansas where he lived for approximately nine months while dealing with his health conditions by himself as well as providing care for his ten-year-old son." Sent. Hr'g Tr. at 6.

Third, the court related that it had inquired of the Bureau of Prisons ("BOP") whether facilities existed to afford Mr. McComb appropriate medical care. The court reported that it had received a letter from the BOP medical director affirming that BOP could "appropriately provide for all of defendant's health-related needs." *Id.* at 5. On this basis, the court found that "defendant's condition [is not] so extraordinary that the Bureau of Prisons would be unable to provide the defendant with needed medical care and correctional treatment in the most effective manner." *Id.* at 6-7.

Finally, the court found that the evidence indicated that "the defendant lived in Arkansas with his ex-wife who, according to numerous witnesses, is a heavy drug user and addict. In order to prevent the defendant from associating with [a] drug user, this court finds it necessary to incarcerate the defendant. Such incarceration will promote respect for the law and deter future criminal conduct." *Id.* at 6.

While the court fully appreciated that it had "authority to *depart or vary* from the advisory guideline range" it nonetheless concluded that, "after

-5-

considering all the factors in Section 3553(a), . . . this court finds by a preponderance of the evidence that the factors suggested by the defendant do not sufficiently reflect mitigating circumstances which would warrant a sentence below the advisory guideline range in this case." *Id.* at 7 (emphasis added). The court then added that "the defendant's motion for downward departure from the advisory guideline range is denied." *Id.*

Though the court spoke of its authority to depart or vary and referenced all of the factors in Section 3553(a) pertinent to a variance request, because its final words formally addressed only the motion for a departure, Mr. McComb's attorney sought further clarity with respect to his motion for variance, stating that "I'm assuming the court's ruling would be the same but that motion has not been ruled upon." *Id.* at 9. The court immediately confirmed counsel's suspicion, responding that "the result and my thinking in this case is the same, that that would be denied." *Id.*

Mr. McComb now appeals, contending that his sentence is unreasonable in two respects. First, he complains that the court acted in a procedurally unreasonable manner at sentencing by failing to address his motion for variance more extensively. Second, Mr. McComb argues that the court's sentence is

substantively unreasonableness in light of his mental and physical condition. We consider these points in turn.[2]

## II

Our appellate review of sentencing challenges is circumscribed by a presumption that within-Guidelines sentences reflecting a correct determination of the applicable Guidelines' range are reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). The Supreme Court recently explained that such a presumption on appeal is permissible because, among other things, in adopting a Guidelines-based sentence the district court necessarily will have come to the same conclusion as the Sentencing Commission about the proper sentence for the case at hand. This

---

[2] Judgment was entered on Mr. McComb's criminal conviction on December 22, 2006. Mr. McComb had ten days to file his notice of appeal, excluding weekends and holidays. Fed. R. App. P. 4(b)(1)(A)(i); *id.* 26(a)(2); Fed. R. Crim. P. 45(a). Under normal circumstances this period would have expired January 9, 2007, and Mr. McComb's notice of appeal, filed in this court a day later, would have been untimely. Circumstances were not normal, however. January 2, 2007 was declared a national day of mourning by the President in light of the death of former President Ford. Following suit, the Governor of Oklahoma ordered the day to be treated as a holiday, such that all official business was suspended. Because any day declared a holiday by "the state where the district court is held" is deemed a legal holiday under Fed. R. Crim. P. 45(a)(4)(B), Mr. McComb's notice of appeal was timely. Before *United States v. Garduno*, --- F.3d. ---, 2007 WL 3261372 (10th Cir. 2007) was decided, we asked Mr. McComb to demonstrate the timeliness of his notice of appeal. He provided the explanation above, and the government did not contest it. *Garduno* subsequently clarified that timeliness under Rule 4(b)(1)(A) is waivable when (as here) the appellee fails to object, but we are, in any event, entirely satisfied Mr. McComb's filing was timely.

concurrence between the Sentencing Commission's "wholesale" judgment and the district court's independent "retail" judgment, the Court held, is strong evidence of the reasonableness of the ultimate sentence imposed. *Rita*, 127 S. Ct. at 2463; *see also Kimbrough v. United States*, No. 06-6330, slip op. at 20 (Dec. 10, 2007).[3]

In *Rita*, the Supreme Court also indicated that, to overcome the presumption of reasonableness, an appellant must demonstrate that the district court abused the discretion afforded to it by Congress in sentencing under 18 U.S.C. § 3553. *Rita*, 127 S. Ct. at 2465; *see also Gall v. United States*, No. 06-7949, slip op. at 2, 12 (Dec. 10, 2007) ("[T]he appellate court must review the sentence under an abuse-of-discretion standard."); *Kristl*, 437 F.3d at 1054. The Court's abuse of discretion formulation is in keeping with our pre-existing understanding of the appropriate level of deference afforded to the district court through the presumption of reasonableness; indeed, since *Rita*, we have emphasized the congruence between the "abuse of discretion" standard of review and our longstanding "reasonableness" test. *See United States v. Angel-Guzman*, --- F.3d ---, 2007 WL 3146825, at *6 (10th Cir. 2007).

Perhaps not unlike any other formulaic standard of review, the term "abuse of discretion" is not altogether free from interpretation. *See, e.g.*, *Angel-Guzman*,

---

[3] Still, the Court emphasized, as have we, that a sentence falling outside the Guidelines' range is not entitled to a converse presumption of unreasonableness. *Gall v. United States*, No. 06-7949, slip op. at 8 (Dec. 10, 2007); *Rita*, 127 S. Ct. at 2467; *United States v. Begay*, 470 F.3d 964, 975-76 (10th Cir. 2006).

2007 WL 3146825, at \*6 (citing Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 763 (1982)). Still, it is a standard we have long familiarity with applying, and one which we have traditionally understood to mean that we will reverse a determination only if the court "exceeded the bounds of permissible choice," given the facts and the applicable law in the case at hand. *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986); *see also Gall*, slip op. at 7 (noting that the "familiar" abuse of discretion standard applies to appellate review of all sentences). That is to say, we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices. And there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing, "a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007). Nonetheless, we will not hesitate to find abuse where a decision is either "based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson*, 59 F.3d 1046,

1048 (10th Cir. 1995) (citing, *inter alia*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).[4]

A

Mr. McComb charges that the district court acted in a procedurally unreasonable manner (*viz.*, abused its discretion) by failing to give a fuller explanation in denying his motion for variance. Because he made no contemporaneous objection to the reasonableness of the district court's sentencing procedures, however, we may review his appeal on this score only for the presence of plain error. *Ruiz-Terrazas*, 477 F.3d at 1199. We will find plain error where there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* In this case, we are able to begin and end our inquiry at the first step, as we see no error at all in the processes employed by the district court.

Because Mr. McComb's sentence falls within the advisory Guidelines' range, as a matter of procedural regularity or reasonableness the district court was

---

[4] Thus, the abuse of discretion standard consists of component parts, affording greater deference to findings of fact (clearly erroneous) than to conclusions of law (erroneous). The factual findings of trial courts have always been afforded great deference, based on the role, position, and expertise of the trial court to make factual determinations. *See, e.g.*, *Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985). On the other hand, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

required as a matter of law only to provide "a general statement of 'the reasons for its imposition of the particular sentence.'" *Id.* at 1199 (quoting 18 U.S.C. § 3553(c)).  To be sure, it may often prove beneficial for a district court to say more,[5] but the Supreme Court in *Rita* explained that, "when a judge decides simply to apply the Guidelines sentence to a particular case, doing so will not necessarily require a lengthy explanation."  127 S. Ct. at 2468.  And so it was that, although the sentencing court's statement of reasons in *Rita* was "brief" indeed[6] and although it might well usefully "have said more," the Court nonetheless held that a more extensive explanation was not required as a matter of

---

[5]  *See Rita*, 127 S. Ct. at 2469 ("By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve. . . . The reasoned responses of [appellate courts and the Sentencing Commission] to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw."); *Ruiz-Terrazas*, 477 F.3d at 1202 ("[A] more detailed sentencing explanation can often prove beneficial, even if it is not mandatory, helping to reduce confusion among the parties, facilitate and expedite judicial review, and provide guidance to practitioners and other defendants, enabling them to better predict the type of sentence that will be imposed in their cases."); *United States v. Pruitt*, 502 F.3d 1154, 1163 (10th Cir. 2007) (A detailed explanation of the sentence imposed advances the fairness of the proceeding to the defendant by "hold[ing] open to public scrutiny the judiciary's reasoning behind depriving a person of a most fundamental right – liberty.").

[6]  In *Rita*, the district judge stated merely that he was "unable to find that the [report's recommended] sentencing guideline range . . . is an inappropriate guideline range for that, and under 3553 . . . the public needs to be protected if it is true, and I must accept as true the jury verdict."  *Id.* at 2462 (internal quotation omitted).  Then, the court concluded simply that it was "appropriate to enter a sentence at the bottom of the Guidelines range."  *Id.* (internal quotations omitted).

-11-

law because the record demonstrated that "the sentencing judge [had] considered the evidence and arguments" of the parties before issuing a within-Guidelines sentence. *Id.* at 2469; *see also United States v. Geiner*, 498 F.3d 1104, 1113 (10th Cir. 2007) (noting that a general discussion "is all that procedural reasonableness requires when a court imposes a sentence within the applicable Guidelines range"); *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1217-18 (10th Cir. 2007) (same).[7]

We have little difficulty concluding that the district court's explanation met, and exceeded, this legal threshold. The court entertained substantial written submissions and live testimony on the question whether to vary (not just depart). Far from just offering a general statement of its rationale, it proffered four analytically distinct reasons for choosing its sentence rather than one below the Guidelines' range, most of which were supported by case-specific factual findings. In doing so, the district court expressly acknowledged its power to "depart or vary" and indicated that, in reaching its result, it had indeed consulted

---

[7] Where a district court imposes a sentence outside, rather than within, the Guidelines' range, it is statutorily required to state its reasons with greater specificity. *See Ruiz-Terrazas*, 477 F.3d at 1200 (citing 18 U.S.C. § 3553(c)(2)); *see also Gall*, slip op at 7 ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."); *id.* at 12 (stating that "a major departure should be supported by a more significant justification than a minor one"); *Rita*, 127 S. Ct. at 2469 ("Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so.").

"all the factors in Section 3553(a)" associated with variance requests, not just the terms of the Guidelines necessary for disposition of a departure motion.

Of course, the district court then proceeded to rule formally only on Mr. McComb's motion for departure. In its ruling on that score, the court did not mention the specific legal bases on which Mr. McComb sought a departure – Guidelines' Sections 5K2.0, 5H1.3, or 5H.1.4 – or in any way embellish its prior discussion. Still, Mr. McComb does not challenge the procedural reasonableness of the district court's disposition of his motion for departure. And for good reason – after all, the district court's earlier explanation had addressed not only why it thought its proposed sentence was appropriate, but also why, in substance, it considered a lower sentence to be inappropriate.

While not complaining about the procedural regularity of the district court's disposition of his downward departure motion, Mr. McComb *does* complain about the court's treatment of his variance motion, stressing that the court did not formally deny the variance motion until counsel sought clarification. But, when asked, the court quickly clarified that the motion for variance was also denied for the reasons it had articulated. Mr. McComb does not explain to us why those reasons were procedurally sufficient to dispose of his motion for a departure but not his motion for a variance. Neither do we see how he fairly could. The sentencing court was plainly cognizant of the motion for variance at the time it articulated its reasons for refusing a lower sentence and plainly indicated on the

record that it had considered the request. Significantly, too, Mr. McComb himself relied on the very same facts and arguments in his two motions, even incorporating by reference arguments from his departure motion into his variance motion. *See*, *e.g.*, Defendant McComb's Mot. for a Downward Departure at 5. Recognizing the common basis for both motions, counsel for Mr. McComb went so far as to state on the record his expectation that "the court's ruling would be the same" on the variance motion as it had been on the departure motion. We fail to see how the district court can be faulted for likewise recognizing the commonalities between the two motions in its ruling from the bench.

Confirming the reasonableness of the district court's approach to our minds, a review of the four reasons offered by the court in its initial discussion for rejecting a below-Guidelines sentence reveals that they clearly pertained and sought to address the Section 3533(a) arguments raised in Mr. McComb's variance motion. For example, the district court expressly considered Mr. McComb's health problems and found that they were not as extreme as he suggested and further found that the BOP would be able effectively to care for Mr. McComb's medical needs, factors relevant to Mr. McComb's arguments for variance under Section 3553(a)(1), (2), (4), (5), and (6). The court likewise concluded that its sentence was necessary to address the seriousness of the underlying offense, to avoid sentencing disparities among co-defendants and others convicted of similar drug crimes, and to deter Mr. McComb from

-14-

associating with a known drug-user, all findings bearing on Mr. McComb's variance submissions under Section 3553(a)(1) and (2).

In these circumstances, we can discern no basis for holding the district court's sentencing procedures constituted an abuse of discretion. Indeed, we have upheld sentences that have done far less to address a defendant's request for a different sentence. *See, e.g.*, *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1230 (10th Cir. 2007) ("[A] district court's duty to explain why it chose the given sentence does not also require it to explain why it decided against a different sentence.").

## B

Beyond challenging the adequacy of the process by which the district court announced its sentence, Mr. McComb contests the substantive reasonableness of the result it reached. Specifically, Mr. McComb argues that the facts and circumstances of his physical and mental infirmities brought on by his stroke were dramatic enough that the district court's failure to diverge from the Guidelines amounted to an abuse of discretion.

In approaching this argument, we begin by readily acknowledging that colorable arguments for a variance exist under Section 3553(a) – including Mr. McComb's fragile health and forsaking of drugs, and the fact that those life changes go some way toward mitigating the risk he might engage in further criminal conduct, matters that go directly to Section 3553(a) factors (1), (2)(B),

(2)(C), and (2)(D).  In light of such evidence, we are in no position to say that any reasonable jurist would have refused a variance.  But that is not our standard of review, and Mr. McComb's evidence tells only part of the story.

We must also acknowledge the district court's factual finding, directly relevant to Section 3553(a)(1) and based on its firsthand assessment of the live testimony of five witnesses, that Mr. McComb's "condition is not nearly as extreme as he would lead this court to believe."  In support of this finding, the court pointed out that Mr. McComb drove from Oklahoma to Arkansas, and that he was able to manage his own health condition as well as the care of his young son, all subsequent to his stroke.  The court also heard from a government witness whose testimony tended to support the court's findings about Mr. McComb's condition.  Further, the court found that Mr. McComb could receive appropriate medical care while in BOP custody, and that the period of incarceration it imposed was necessary, among other things, to prevent Mr. McComb from associating with a known drug user, factors relevant under Section 3553(a)(1) and (2).

Mr. McComb offers no argument or reason for us to think that the district court's findings, while perhaps contestable, were *clearly* erroneous – that is "more than possibly or even probably wrong," but "pellucid to any objective observer." *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1161 (10th Cir. 2007) (internal quotation omitted).  Neither has Mr. McComb

demonstrated before us, with the district court's findings thus entrenched, that the sentence it imposed resulted from legal error. Instead, Mr. McComb essentially asks us simply to look with more favor on the facts surrounding his medical condition than the district court did. But we are not the factfinders of first resort, and our role in reviewing a district court's factual findings is closely circumscribed. Because the sentencing court in this case made no clear errors of fact and no discernible errors of law, we cannot say that its within-Guidelines sentence, although perhaps not the only one permissible on this record, was reversible as an abuse of discretion.

\* \* \*

The judgment of the district court is

*Affirmed.*