**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VICTOR MANUEL OLIVAS-
PORRAS,

Defendant-Appellant.

No. 09-5075
(D.C. No. 4:08-CR-00051-CVE-10)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.


Victor Manuel Olivas-Porras was indicted for his participation in a

conspiracy to transport drugs from Mexico to various locations in the United

States, including Kansas City. Following a jury trial, Mr. Olivas-Porras was

convicted of conspiring to possess with intent to distribute at least one thousand

kilograms of marijuana, in violation of 21 U.S.C. § 846, and was sentenced to 240

months imprisonment. On appeal, Mr. Olivas-Porras challenges his conviction on

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the ground that the evidence at trial proved only that he may be a member of a different drug conspiracy, not the one charged in the indictment. He also challenges his sentence, arguing that the court should have granted his request for a below-Guidelines sentence. Finding no error in the district court's dispositions on either issue, we affirm.

I

A

In 2008, Mr. Olivas-Porras found himself, along with eight other defendants, indicted in the Northern District of Oklahoma for conspiring to distribute cocaine, marijuana, and methamphetamine. Count One of the second superseding indictment charged Mr. Olivas-Porras with being part of a drug trafficking conspiracy headed by Manuel and Mario Bonilla. According to the indictment, this conspiracy imported methamphetamine, cocaine, and marijuana from Mexico into Texas and transported those drugs to various locations, including Oklahoma and Kansas City, for distribution. The indictment alleged that Mr. Olivas-Porras's role in the conspiracy was to "handle[] large quantities of drugs." R. Vol. I Pt. A at 124. In fact, the indictment alleged that Mr. Olivas-Porras "was the intended recipient of approximately 650 kilograms of marijuana that were to be delivered by a drug courier," R. Vol. I Pt. A at 124, and the indictment claimed that, in Kansas City, Mr. Olivas-Porras repeatedly received deliveries of marijuana from a co-conspirator.

While Mr. Olivas-Porras's co-defendants pled guilty to various charges in the indictment, Mr. Olivas-Porras elected to proceed to trial. During that trial, Jared Yates, an agent who investigated the charged conspiracy, testified that whenever the conspiracy transported drugs to Kansas City, Mr. Olivas-Porras assisted in receiving and storing them. Mario Bonilla, one of the leaders of the charged conspiracy, also testified for the government that he and his brother, Manuel Bonilla, arranged for the transportation of marijuana from Texas to Kansas City, where it would be delivered to a buyer named Nano Bilbao and "his helper," Mr. Olivas-Porras. Suppl. R. Vol. I at 90, 145. Mr. Bonilla explained that Mr. Bilbao and Mr. Olivas-Porras were in charge of unloading and distributing the drugs in Kansas City. Mr. Bonilla acknowledged that Mr. Olivas-Porras did not work directly for him, but testified that he would not have been paid if Mr. Olivas-Porras had not unloaded the marijuana in Kansas City.

Another government witness, Ryan Lance, testified that, at the direction of Manuel Bonilla, he drove a trailer containing 1,500 pounds of marijuana to Kansas City. Manuel Bonilla had provided Mr. Lance with Mr. Olivas-Porras's phone number and instructed Mr. Lance to meet up with Mr. Olivas-Porras upon arrival in Kansas City. Mr. Lance testified that he did just that, and that he then followed Mr. Olivas-Porras to a house in Kansas City, where he and Mr. Olivas-Porras unloaded the marijuana. Mr. Lance explained that he later made another

trip to Kansas City at Manuel Bonilla's direction, and again met Mr. Olivas-Porras who again helped him unload marijuana.

Another witness, Sean Bird, testified that he transported marijuana to Kansas City for Manuel Bonilla, and that, on several occasions, he met Mr. Olivas-Porras at a McDonald's restaurant in Kansas City and followed him to a location where the marijuana was unloaded. Finally, Holly King testified that, at the direction of Mario Bonilla, she drove a trailer containing marijuana to Kansas City. She testified that, when she arrived in Kansas City, she called Mario Bonilla to arrange for someone to meet her. Mario Bonilla told her he was going to call his "friend," and later Mr. Olivas-Porras arrived and instructed her to follow him to his home. Suppl. R. Vol. I at 270. The trailer full of marijuana was then temporarily stored there.

At the close of the government's evidence at trial, Mr. Olivas-Porras moved for judgment of acquittal, arguing that the evidence did not establish that he had participated in the drug conspiracy charged in the indictment. The district court denied the motion, finding that there was "sufficient evidence from which a reasonable jury could conclude that Mr. Olivas-Porras did, indeed, enter into" the charged drug conspiracy "expressly or impliedly." Suppl. R. Vol. I at 365. At the close of all evidence, Mr. Olivas-Porras renewed his motion for judgment of acquittal, which the court again denied. The jury then returned its verdict, finding

Mr. Olivas-Porras guilty of conspiring to possess with intent to distribute at least one thousand kilograms of marijuana, as charged in Count One of the indictment.

B

At sentencing, the probation office recommended a Guidelines-based sentence of 324 to 405 months based, in part, on a three-level enhancement under U.S.S.G. § 3B1.1 for being the manager or supervisor of the drug conspiracy. Mr. Olivas-Porras objected to this enhancement, arguing that he was only a "delivery facilitator for the shipment of marijuana." R. Vol. I Pt. A at 291-92. Mr. Olivas-Porras also argued that a proper consideration of the factors enumerated under 18 U.S.C. § 3553(a) suggested that he deserved a below-Guidelines sentence.

In the end, the district court granted Mr. Olivas-Porras's objection to the § 3B1.1 enhancement, but declined to enter a below-Guidelines sentence. The court indicated that it understood the Guidelines to be merely advisory, and that the Guidelines suggested a sentencing range of 235 to 293 months. The district court then announced its judgment that a 240-month sentence would be appropriate in this case, taking into account the Section 3553(a) factors. Specifically, the district court noted that unlike his co-defendants who had received lesser sentences, Mr. Olivas-Porras had elected not to cooperate with the government.

II

On appeal, Mr. Olivas-Porras raises two issues. First, he argues that the district court erred in denying his motions for acquittal because the evidence at trial proved only that he might be a member of a different drug conspiracy than the one charged in the indictment. Second, he argues that the district court erred when it refused to grant his request for a below-Guidelines sentence. We address each contention in turn.

A

Mr. Olivas-Porras argues that the district court should have directed a judgment of acquittal in his favor because the evidence at trial did not prove that he was a member of the charged conspiracy, but instead proved only that he might have been a member of a separate, uncharged drug conspiracy. This variance between the case he expected and the one that was tried, he contends, prejudiced his Sixth Amendment right to be informed of the nature and cause of the accusation against him.

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *United States v. Ailsworth*, 138 F.3d 843, 848 (10th Cir. 1998) (internal quotation marks omitted). But, a "variance is reversible error only if it affects the substantial rights of the accused." *Id.* Accordingly, in the conspiracy context there are "two questions" we must ask in assessing a variance claim: First, was there sufficient evidence

produced at trial to support the jury's finding of the conspiracy charged in the indictment? Second, if not, was the variance between the conspiracy charged and the conspiracy proven at trial substantially prejudicial to the defendant? *United States v. Windrix*, 405 F.3d 1146, 1153 (10th Cir. 2005); *see also United States v. Longstreet*, 567 F.3d 911, 918 (7th Cir. 2009). In evaluating the first question, we are obliged to "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the government, asking whether a reasonable jury could have found" Mr. Olivas-Porras guilty of the charged conspiracy beyond a reasonable doubt. *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008).

In this case, we need not reach the question of prejudice because we are convinced that a variance did not occur. As described above, Count One of the indictment alleged that Mr. Olivas-Porras and others conspired to import methamphetamine, cocaine, and marijuana from Mexico into Texas, and to transport those drugs to various locations, including Oklahoma and Kansas City, for distribution. And Mr. Olivas-Porras's alleged role in the conspiracy was to "handl[e] large quantities of drugs" in Kansas City. R. Vol. I Pt. A at 124. In order to prove at trial that Mr. Olivas-Porras was part of this charged conspiracy, the government had to show that "(1) two or more persons agreed to violate the law, (2) [Mr. Olivas-Porras] knew the essential objectives of the conspiracy, (3) [Mr. Olivas-Porras] knowingly and voluntarily participated in the conspiracy, and

(4) the alleged coconspirators were interdependent." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

The record reveals that the government proved each of these things. The evidence adduced at trial established that, as alleged in the indictment, Mr. Olivas-Porras and others agreed to transport drugs to Kansas City; Mr. Olivas-Porras knew the essential objectives of this conspiracy; and he knowingly and voluntarily participated in it. Among other things, the jury heard from Mr. Lance that Manuel Bonilla, a leader of the conspiracy, had instructed him to meet with Mr. Olivas-Porras upon arriving in Kansas City with the drugs. And the jury learned that, on two occasions, Mr. Lance met Mr. Olivas-Porras in Kansas City and followed him to a house where he and Mr. Olivas-Porras unloaded the marijuana Mr. Lance had transported. Similarly, the jury learned from Mr. Bird that, when he arrived in Kansas City with marijuana, he too met Mr. Olivas-Porras and followed him to a location where the marijuana could be unloaded. Finally, the jury heard from Ms. King that, on one occasion, she drove a trailer of marijuana to Mr. Olivas-Porras's home, where it was temporarily stored. As we have explained many times, "[e]ven a single overt act by the defendant can be sufficient to connect him to the conspiracy if that act leads to a reasonable inference of intent to participate in an unlawful agreement or criminal enterprise." *United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009) (internal

quotation marks omitted). Here, the government amassed considerably more evidence than that.

Finally and likewise, there was sufficient evidence at trial to support a jury finding of interdependence. Interdependence requires that a defendant's actions "facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." *Yehling*, 456 F.3d at 1241 (internal quotation marks omitted). Each co-conspirator must "depend[] on the successful operation of each 'link' in the chain to achieve the common goal." *Id.* In this case, the jury heard testimony that Mr. Olivas-Porras repeatedly assisted couriers employed by the conspiracy to transport marijuana to Kansas City. He not only met these couriers when they arrived in Kansas City, he also helped them find a safe place to unload the drugs and personally assisted in the unloading, on at least one occasion storing the drugs in his own home. In fact, Mario Bonilla, one of the managers of the conspiracy, testified at trial that he would not have been paid for transporting the drugs if Mr. Olivas-Porras had not unloaded them when they arrived in Kansas City. In other words, a rational jury could conclude that the charged conspiracy could not have succeeded without Mr. Olivas-Porras.

Mr. Olivas-Porras attempts to avoid this result by arguing that the evidence at trial proved only that he may be a member of a separate, uncharged drug conspiracy run by Nano Bilbao. Mr. Olivas-Porras argues that the drug conspiracy charged in Count One of the indictment involved only the

transportation of drugs from Mexico to Kansas City. Once the drugs arrived in Kansas City, he says, they were sold to a separate drug conspiracy — not charged in the indictment — that was run by Mr. Bilbao and that handled the distribution of the drugs within Kansas City. Mr. Olivas-Porras argues that, at most, the evidence at trial proved that he may be a member of that uncharged conspiracy. To support this contention, he emphasizes that it was Mr. Bilbao who paid him to off-load the drugs in Kansas City. And he also notes that the government's witnesses at trial testified that he worked for Mr. Bilbao.

Mr. Olivas-Porras is correct that Count One of the indictment does not address a conspiracy run by Mr. Bilbao to distribute drugs within Kansas City, but rather focuses on a conspiracy managed by Manuel and Mario Bonilla to transport drugs to Kansas City. Mr. Olivas-Porras is also correct that trial evidence suggested that Mr. Olivas-Porras assisted an operation run by Mr. Bilbao. The problem is that none of this changes the fact that, based on the evidence introduced at trial, a rational jury could have found that Mr. Olivas-Porras assisted and participated in the particular conspiracy charged in Count One of the indictment. Even accepting Mr. Olivas-Porras's suggestion that he may have been involved in another, separate conspiracy, there is no reason why he could not also be a member of the conspiracy charged by the government. It is black letter law that "an individual may, without contradiction, be a member of two conspiracies at the same time." *United States v. Mojica*, 185 F.3d 780, 787

(7th Cir. 1999). The relevant question for this appeal thus isn't what *other conspiracy* Mr. Olivas-Porras might have been involved in, but whether sufficient evidence existed of Mr. Olivas-Porras's involvement in the *specific conspiracy* the government chose to indict. We cannot help but conclude that sufficient evidence exists in this record to suggest Mr. Olivas-Porras was involved in the indicted conspiracy and that, accordingly, his variance claim must fail.[1]

B

Separately, Mr. Olivas-Porras argues that the district court erred when it declined to grant his request for variance and gave him a higher sentence than certain of his co-defendants. We review challenges to a district court's sentencing decision for reasonableness by asking whether the sentencing court abused its discretion. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). Under our case law, a sentence falling within the range suggested by the sentencing guidelines, like Mr. Olivas-Porras's, is presumed to be reasonable. *Id.* To overcome that presumption and demonstrate that the district court abused its discretion, Mr. Olivas-Porras must show that the court rendered a judgment that

---

[1] Mr. Olivas-Porras additionally claims that his conviction as a member of the charged conspiracy raises double jeopardy concerns because, in the future, he might be charged as a member of Mr. Bilbao's drug conspiracy based on the same conduct. But that argument rests on speculation. Mr. Olivas-Porras has not been charged in any other conspiracy based on the conduct that supported his conviction in this case. And speculating on hypothetical future disputes an Article III court generally must avoid.

- 11 -

"exceeded the bounds of . . . rationally available choices" before it, given "the facts and the applicable law." *Id.* (internal quotation marks omitted).

We understand Mr. Olivas-Porras's challenge in this appeal to be directed to the substance of the district court's sentencing decision, not the adequacy of the district court's processes in reaching that decision. And this is for good reason: the district court explained at length the reasons for its sentence, referencing a number of the pertinent statutory factors and evincing an awareness of its ample discretion.

With respect to Mr. Olivas-Porras's substantive challenge, though, we still see no basis on which to reverse the district court. The court was well aware of Mr. Olivas-Porras's argument that a sentence within the recommended Guidelines range would create sentencing disparities between him and certain of his co-defendants. The court expressly addressed and justified those disparities on the basis that Mr. Olivas-Porras "chose not to cooperate with the government in this case," while his co-defendants who received lesser sentences did. R. Vol. II at 72. This difference in fact renders the disparity between Mr. Olivas-Porras's sentence and those of his co-defendants reasonable as a matter of law. We have repeatedly stated that "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) (quotation marks omitted). Even more specifically, we have held that a "decision to accept responsibility and assist the government does not create

an unwarranted disparity under § 3553(a)(6)," *United States v. Haley*, 529 F.3d 1308, 1312 (10th Cir. 2008), and that is exactly what occurred here.  To the extent the district court provided other defendants more favorable sentences, that was not the product of irrational caprice but was instead the result of a rational, reasonable accommodation to those who, unlike Mr. Olivas-Porras, chose to accept responsibility for their roles in the conspiracy and cooperate with authorities.

* * *

Mr. Olivas-Porras's conviction and sentence are

*Affirmed.*

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

- 13 -