**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TODD KUJAT, also known as Todd
Bailey,

Defendant - Appellant.

No. 14-1187
(D.C. No. 1:10-CR-00438-JLK-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Defendant and Appellant, Todd Kujat, a.k.a. Todd Bailey, appeals the

sixty-month sentence imposed following his plea of guilty to one count of wire

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

fraud, in violation of 18 U.S.C. § 1343.  He argues that his sentence, some

nineteen months above the advisory sentencing range provided by the United

States Guidelines Commission, Guidelines Manual ("USSG"), is substantively

unreasonable.  We find the sentence reasonable and therefore affirm it.

## BACKGROUND

The basic facts underlying this case are undisputed, as provided in the Plea

Agreement:

> The defendant [Mr. Kujat] devised a scheme to defraud
> MoneyGram international and its customers by arranging for wire
> transfers to be sent by customers via interstate telephone lines to
> provided names under the belief that these transfers were utilized to
> post bail for an incarcerated co-worker.  In fact, there was no
> incarcerated co-worker and the money was wired via MoneyGram in
> a form which was capable of being obtained by persons without using
> any form of identification.  The defendant, claiming to be a law
> enforcement officer, contacted various business entities and falsely
> claim[ed] that one of their employees was arrested and [wa]s
> incarcerated.  The defendant would then request, on behalf of the
> incarcerated person, the employees to wire money, via MoneyGram,
> to enable their fellow employee to post bail and be released.

Plea Agreement at 5; R. Vol. 1 at 23.  Mr. Kujat would then withdraw the money

after it had been wired into the account at MoneyGram.  Mr. Kujat executed this

scheme at least 100 times between 2009 and 2012 to fraudulently collect funds

from seventy-three separate victims.  The agreed upon loss amount under the

Guidelines was more than $68,000.

In preparation for sentencing, the United States Probation Office prepared a

presentence report ("PSR").  The PSR calculated Mr. Kujat's total offense level

as 16, which included a four-level increase under USSG § 2B1.1(b)(1)(D) because there were fifty or more victims. The PSR also calculated Mr. Kujat's criminal history category as category IV. This resulted in an advisory Guidelines sentencing range of thirty-three to forty-one months. The PSR recommended a sentence of forty-one months, at the top of the advisory range.

Mr. Kujat objected to the PSR and moved for a downward departure based on the claimed over-representation of his criminal history and sought a variance based on the 18 U.S.C. § 3553(a) sentencing factors. Mr. Kujat requested a sentence of twenty-four months, based on the nature of the offense and Mr. Kujat's history and characteristics. Mr. Kujat argued that he had experienced an unstable childhood without a relationship with his alcoholic father, but that, despite those circumstances, he had managed to establish himself as a talented tattoo artist with a supportive family. He also claimed he was a devoted father who needed to be present in the lives of his two daughters, who were then in foster care.

At Mr. Kujat's sentencing hearing, the district court gave notice that it would not follow the Sentencing Guidelines "for a number of reasons." Tr. of Sentencing Hr'g at 2; R. Vol. 3 at 23. Mr. Kujat's counsel then argued that Mr. Kujat's criminal history was over-represented since "[m]ost of the serious criminal offenses that Mr. Kujat has on his record took place around 20 years ago, with the exception of the last incident . . . for which he did some time in the

Colorado Department of Corrections." Id. at 3. Counsel also stated that Mr. Kujat is a talented tattoo artist, "fully capable of supporting himself and his family" and would be able to make restitution. Id. at 3-4. Mr. Kujat's counsel further said that Mr. Kujat had a supportive family, was a devoted father, and needed to care for his young daughters then in foster care due to their mother's substance abuse problem. Counsel observed that the scam in which Mr. Kujat was involved was extensive, but that Mr. Kujat's "part in it was, just like many people, a bit piece." Id. at 5. Mr. Kujat's counsel finally noted that Mr. Kujat had made efforts to cooperate with authorities, and had put himself in danger by reporting criminal activities by fellow inmates while he was being detained.

The government conceded that Mr. Kujat had cooperated, but stated that his cooperation was not sufficient to warrant a USSG § 5K1.1 motion for a downward departure based on substantial assistance. The government ultimately stated it would defer to the judgment of the court. Mr. Kujat allocuted, accepting responsibility for his actions, apologizing to everyone involved, and asking for a sentence of time served with release to a halfway house.

The court then explained the sentence, noting that it was not following the Guidelines, in part because:

> the guidelines, as they were composed in cases like this, pay attention to the amount of money that was taken, but not to the number of victims or the standing of the victims. It would matter not in the guidelines if . . . all of this money was taken from one institution, but it wasn't; it was taken from a great many people.

And I don't think the guidelines provide enough or sufficient consideration to the number of victims or to the kind of victims.

Id. at 16. The court then addressed Mr. Kujat, stating that "this is the ninth felony conviction, however old those others are. It is ludicrous to disregard your criminal history and the fact that you are a recidivist." Id. at 16-17. The court then rejected two of Mr. Kujat's objections to the PSR, but sustained a third objection, although noting that those rulings would not affect the court's sentencing decision. The court then stated as follows:

> The conclusion is that the Court is not going to follow the guidelines for the reasons stated, and, therefore, a motion for downward departure or variance is not relevant to this sentencing. I'm going to sentence according to Section 3553 and relate it to the specific aspects of this conduct.

> In that regard, the one thing that is overriding in all of this in terms of deterrence is that there is a record of you violating the law at your convenience. As indicated, these are not violent crimes in the sense that somebody was beaten up, but I really wonder . . . when I look at the responses by these victims, one of whom says that she has lost the ability to trust anybody, I wonder which is more humane, just a beating, or taking away somebody's ability to trust other people?

> What really bothers me about this case is what I've already indicated. It's the number – not only the number of these witnesses . . . and the amounts taken from them, but the fact that these are just ordinary working people who were solicited by you, going to the very decency of each one of them to help somebody else. . . . [T]o betray human beings in that fashion, . . . I know . . . reflects an inability to have a sense of conscience or compassion for other people.

> . . . And now you want me to put you in a halfway house because of your children. This is your ninth felony conviction. You

-5-

contacted and falsely claimed to employees that one of their fellow employees was arrested and incarcerated and you imposed upon them because of their better nature, their generosity, and their feelings for other people, and some of them as a consequence have even lost the ability to trust. Whether they'll ever regain that or not, I don't know.

Your criminal history starts at age 22. It consists of fraud, not violence, . . . but I am not sure in my own mind that that's any less damaging than committing violence on other people. It's violence on their spirit, on their nature, that's for sure.

And I don't think that you are a physical danger to other people, but the fact that you did this to 48 different people who were easy marks, easy marks because they trust, and because they may not be as sophisticated as other, I don't see any hope for rehabilitation. I don't see anything other than you as a recidivist, with constant violations of the law whenever it appears to be convenient to you. And I think that that has to be punished.

Id. at 18-20 (emphasis added). The court then sentenced Mr. Kujat to sixty months' imprisonment, followed by three years of supervised release. As indicated, this is nineteen months above the top of the advisory Guidelines sentencing range.

Mr. Kujat appeals, arguing that his sentence is substantively unreasonable because it "does not reflect a reasoned balancing of the § 3553(a) factors" and it "ignores the Guidelines addition of 4 levels for the victims under [USSG § 2B1.1(b)(2)(B)]." Appellant's Br. at 5.

## DISCUSSION

"[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set

forth in 18 U.S.C. § 3553(a)." United States v. Reyes-Alfonso, 653 F.3d 1137, 1145 (10th Cir. 2011) (quoting United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008)). "[I]n many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." Id. (quoting United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007)).

Furthermore, we "now review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." United States v. Smart, 518 F.3d 800, 806 (10th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)). And, as an appellate court, "[w]e may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo." Id. at 808. Rather, in cases involving a variance from the advisory Guidelines range, we must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.. "We reverse only when the district court 'renders a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable.'" United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir. 2010) (quoting United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009)); see also, United States v. Damato, 672 F.3d 832, 838 (10th Cir. 2012).

Applying those standards, we cannot say that the district court abused its discretion in selecting the sixty-month sentence it imposed on Mr. Kujat. The court clearly and explicitly explained its reasoning, utilizing the § 3553(a) sentencing factors.[1] It discussed why Mr. Kujat's crime, while not physically violent, was nonetheless serious and deserving of significant punishment. And it took into account, as it was entitled to do, Mr. Kujat's criminal history and the fact that the instant offense was the ninth in Mr. Kujat's life, even though he had experienced some period of time without the evident commission of criminal offenses. In sum, the fact that Mr. Kujat would have us embrace a different balance between the various § 3553(a) sentencing factors does not convince us that the district court's sentencing decision is arbitrary, capricious, whimsical or manifestly unreasonable.

---

[1]We note that the Guidelines do, in fact, take into account the number of victims involved, in that they increase the offense level in accordance with increasing numbers of victims. See USSG § 2B1.1(b)(2)(A)-(C). The district court in this case indicated that it would not follow the Guidelines in selecting a sentence, and the Guidelines are indeed advisory and not mandatory. The district court explained its concern for not just the number, but also the nature, of the victims in this case. In any event, the district court did not abuse its discretion in sentencing Mr. Kujat to sixty months, as we explain in text.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge