**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN MANUEL LOPEZ-GARCIA,

Defendant - Appellant.

No. 16-3174
(D.C. No. 2:14-CR-20071-JAR-7)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **McKAY**, and **MURPHY**, Circuit Judges.

Defendant Juan Manuel Lopez-Garcia appeals the sentence entered in this criminal case.

Defendant was convicted by a jury of conspiring to distribute and to possess with the intent to distribute more than fifty grams of methamphetamine and of possessing firearms as an illegal alien. Based on the large amount of drugs involved, Defendant's leadership role in the drug-trafficking operation, his maintenance of a residence which was used to facilitate drug-trafficking, his

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This case was ordered submitted on the briefs on September 28, 2017.

firearm possession, and his involvement in importing the drugs through the Sinaloa cartel in Mexico, where his brother is a high-ranking cartel leader, the Presentence Investigation Report calculated a total offense level of 48. The government argued that his offense level should be increased an additional two levels under U.S.S.G. § 3C1.1 for the obstruction of justice. After hearing testimony from two trial witnesses and an FBI agent about the threats several witnesses received prior to Defendant's trial, the sentencing court held that the obstruction enhancement was "well justified" and adjusted the offense level up to 50. (Appellant's App. Vol. III at 169.) This increase was mainly academic, however: under the Sentencing Guidelines, in the "rare case[]" where the Guidelines calculate a total offense level of more than 43, the higher offense level is "treated as an offense level of 43," which results in an advisory sentence of life imprisonment across the board, regardless of a defendant's prior criminal history. U.S.S.G. ch. 5, pt. A, cmt. n.2. The court held that the advisory Guidelines sentence of life imprisonment was appropriate under all of the circumstances of this case, and in particular because Defendant was the leader of "a huge drug trafficking organization" that introduced "substantial amounts of methamphetamine . . . into the lives of undoubtedly thousands of people who are suffering and who will continue to suffer because of the product sold by this defendant and those that worked for him." (Appellant's App. Vol. III at 173.) On appeal, Defendant challenges both the procedural and the substantive

reasonableness of his sentence.

"In reviewing the district court's sentence for procedural reasonableness, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Shuck*, 713 F.3d 563, 570 (10th Cir. 2013). For a factual finding to constitute clear error, "we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995).

Defendant argues that the district court's sentence was not procedurally reasonable because the court should not have imposed the two-level enhancement for the obstruction of justice, both because this enhancement was primarily based on unreliable hearsay testimony and because there was no evidence that directly linked Defendant to the threats made against the witnesses and potential witnesses. We are not persuaded by either of these arguments.

"[W]e have consistently held that hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability," *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012) (internal quotation marks omitted), and we conclude that the evidence in this case was sufficient to "clear[] this low hurdle," *id.* An FBI agent testified that one of Defendant's testifying co-defendants reported "receiv[ing] threats in regards to testifying against

[Defendant]" while he was incarcerated before the trial. (Appellant's App. Vol. III at 63.) The FBI agent testified that two other co-defendants cooperated with the government from the time they were arrested until shortly after the witness lists for Defendant's trial were released, at which point they refused to testify or cooperate any further based on threats they had received from Defendant. The court noted that this hearsay testimony was consistent with the representations that the co-defendants' respective attorneys had made to the court shortly before a change-of-plea hearing and at the co-defendants' sentencing hearings. The court also stated that this hearsay testimony was consistent with the testimony of two witnesses at the sentencing hearing that they had received threats regarding their trial testimony and with the court's observations of Defendant's sister's intimidating behavior towards the trial witnesses. The court also received evidence about the ways incarcerated defendants can convey threats and other messages to people both inside and outside of the penal system. Finally, the court found that there was strong circumstantial evidence that the threats were made "at the behest and direction of the defendant," based on his high-ranking position in this large-scale drug-trafficking hierarchy and the fact that, as the sole defendant who went to trial, he had by far the strongest incentive to deter the witnesses from testifying. (*Id.* at 169.) Given the corroborating evidence and other indications of reliability in this case, including the district court's own observations at the trial and the change-of-plea hearing, we are persuaded that the district court did

not clearly err in relying on the hearsay testimony about threats received by the witnesses and cooperating co-defendants in this case.

We also see no clear error in the district court's factual finding that the threats were made at Defendant's behest and direction. As the district court noted, the circumstantial evidence strongly suggested that the threats were made at Defendant's direction, given his leadership role in the organization and the fact that he was the only defendant who went to trial. Moreover, the FBI agent testified that Defendant's co-defendants believed Defendant had sent the threats, and he explained how messages can be transmitted from an incarcerated defendant to other inmates even if they are not in direct contact. Finally, we note that threats against witnesses do not have to be made directly by a defendant in order to qualify for an obstruction-of-justice sentencing enhancement; it is sufficient if the defendant conveys such threats indirectly, as the district court found to have occurred in this case. *See* U.S.S.G. § 3C1.1 n.4(A). The district court's finding that the threats came from Defendant was permissible and plausible in light of all of the evidence in the record on appeal, and we therefore affirm this determination.

Defendant also appears to argue that his sentence was procedurally unreasonable because the district court failed to consider the sentencing goal of rehabilitation when it imposed a life sentence upon someone with no prior criminal record. There is no legal merit to this argument. We have expressly

held that 18 U.S.C. § 3582(a) "prohibits consideration of rehabilitation in setting one aspect of th[e] sentence, the term of imprisonment." *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011). "Thus, while a court can pursue the goal of rehabilitation in sentencing, for example, in setting the terms of supervised release, it cannot do so in either determining whether to impose a term of incarceration, or in determining the length of that term." *Id.* Defendant has accordingly shown no procedural error in the determination of his sentence.

Finally, Defendant challenges the substantive reasonableness of his sentence. The government argues that Defendant did not raise this issue below and thus our review should be only for plain error, while Defendant argues that we should review under our usual abuse-of-discretion standard. We need not resolve this dispute because we would affirm the district court's ruling under either standard.

In reviewing the substantive reasonableness of a sentence for an abuse of discretion, we will reverse "only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted).

> This is to say, we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices. And there are perhaps few arenas

where the range of rationally permissible choices is as large as it is in sentencing, a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders. Nonetheless, we will not hesitate to find abuse where a decision is either based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment.

*Id.* at 1053–54 (internal quotation marks and citations omitted). "Further, we presume a sentence is reasonable if it is within the properly calculated guideline range." *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013).

Defendant contends that the district court abused its discretion in imposing a life sentence upon him in this case because (1) two of his co-defendants—who pled guilty and were lower in the cartel's hierarchy than Defendant—each received only thirty-year sentences; (2) Defendant had no criminal record, and a life sentence for a first-time drug offense is not just and does not promote respect for the court; (3) a life sentence removes all hope for rehabilitation or redemption, which is one of the primary purposes of sentencing; (4) empirical research has shown that lengthening sentences has no impact on general deterrence, so the goal of deterrence is not served by this life sentence; and (5) the public would be protected just as well by a thirty-year sentence as by the life sentence imposed in this case.

The district court could perhaps have exercised its discretion to impose a below-Guidelines sentence of less than life imprisonment based on some or all of

these arguments.  However, we are not persuaded that the district court's decision to impose the advisory Guidelines sentence of life imprisonment exceeded the bounds of rationally permissible choices available to the court at sentencing.  The seriousness of Defendant's conduct is reflected in his total offense level of 50—seven levels higher than needed to trigger an advisory life sentence under the Guidelines—and we cannot say that the district court abused its discretion in concluding that a sentence of life imprisonment would be appropriate given Defendant's leadership role in a large-scale drug-trafficking organization that obtained significant quantities of drugs from the Sinaloa cartel in Mexico for distribution in Kansas.

We accordingly **AFFIRM** the district court's sentencing decision.

Entered for the Court


Monroe G. McKay
Circuit Judge