FILED
United States Court of Appeals
Tenth Circuit

November 8, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CESAR OSBALDO ARMENDARIZ
SOTO, a/k/a Santiago Maldonado-
Valenzuela,

      Defendant-Appellant.

No. 10-3307

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:07-CR-20099-JWL-DJW-16)**

Submitted on the briefs[*]:

Dionne M. Scherff, Erickson Scherff, LLC, Overland Park, Kansas, for
Defendant-Appellant.

Barry R. Grissom, United States Attorney, and James A. Brown, Assistant United
States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Before **GORSUCH**, **HOLLOWAY**, and **McKAY**, Circuit Judges.

**GORSUCH**, Circuit Judge.

---

    [*]  After examining the briefs and appellate record, this panel has
determined unanimously to grant the parties' request for a decision on the briefs
without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Must a district court allow a defendant to withdraw his guilty plea — even when the request is based on a lie? Unsurprisingly, we hold the answer is no. The law does not permit anyone to compel judicial action based on intentionally false statements.

This case began with Cesar Osbaldo Armendariz Soto facing an indictment for his involvement in a drug distribution conspiracy. The government charged him with, among other things, conspiracy to distribute large quantities of cocaine and marijuana, money laundering, and a firearms violation. As part of an effort to show his cooperation and reduce his sentence, and in consultation with his attorney, Mr. Armendariz Soto initially agreed to (and did) plead guilty to these charges without a plea agreement. But then, some months later (though still before his sentencing hearing), he tried to reverse course, asking the court to allow him to withdraw the plea he had entered and the court had accepted.

The district court convened a hearing to consider the question. There, Mr. Armendariz Soto argued his plea wasn't entered knowingly or voluntarily. This, Mr. Armendariz Soto testified, was because Thomas Telthorst, his counsel at the time of the plea, promised him a fifteen year sentence if he agreed to admit his guilt. And it turned out that counsel had no basis for making such a promise. Mr. Armendariz Soto thus argued that his decision to plead guilty was premised on a misunderstanding of the facts. Of course, Mr. Armendariz Soto still had to

explain one thing. During his plea colloquy the district court clearly and repeatedly asked Mr. Armendariz Soto if he understood that his plea guaranteed him no specific sentence — and each time Mr. Armendariz Soto said he did. Mr. Armendariz Soto explained, however, that Mr. Telthorst told him to answer "yes" to the district court's questions whether or not he understood them.

For his part, Mr. Telthorst disputed all this. He testified that he had a sentencing strategy aimed at "laying the groundwork for a comprehensive biographical sentencing memorandum that would give us credibility to ask for the statutory minimum 15-year sentence." But, he said, he never promised any sentence to his client. Indeed, counsel testified that he explained fully and clearly to Mr. Armendariz Soto that he could guarantee no sentencing outcome. Counsel also swore that he never remotely suggested that his client should answer yes to every question during the plea colloquy. "My guidance would have been just the contrary. As a matter of practice, I always tell clients that . . . if they have questions or don't understand something they should stop the proceeding and we should talk privately."

Ultimately, the district court refused to allow Mr. Armendariz Soto to retract his guilty plea. "Frankly," the district court explained, "I do not find Mr. Armendariz Soto's testimony credible. . . . I simply think he is not telling us the truth." In support of this finding the court cited the fact that, during his plea colloquy Mr. Armendariz Soto told the court twice that no one — including his

lawyer — had made any promises or guarantees about what his sentence would be. And, the court found, it had "no basis to believe that Mr. Telthorst's conduct in any way misled Mr. Armendariz Soto" into thinking he should simply answer "yes" to all the court's questions. In sum, the district court concluded, "the record shows that Mr. Armendariz Soto's plea was entered into knowingly . . . [and] voluntar[ily] . . . and I do not believe that he has demonstrated a fair and just reason for withdrawing the plea." The court further found that "I think based on the hearing we have had today that Mr. Armendariz Soto simply, when the time came [to proceed to sentencing], decided that he didn't think his position looked as good as he hoped it would be and perhaps in a sense of desperation decided to see if he could start the process all over again."

Later at Mr. Armendariz Soto's sentencing hearing, the district court held that the false testimony he had given in his effort to undo his plea warranted the imposition of a sentencing enhancement for obstruction of justice (U.S.S.G. § 3C1.1) and the denial of a potential sentencing reduction for acceptance of responsibility (U.S.S.G. § 3E1.1). The court's resulting sentencing calculations yielded an advisory guidelines range of 420 months to life imprisonment. After weighing the sentencing factors listed in 18 U.S.C. § 3553(a), the district court imposed a sentence of 420 months, the bottom end of the guidelines range.

On appeal, Mr. Armendariz Soto argues that (1) he should have been allowed to withdraw his guilty plea, (2) the district court erred in applying an

obstruction of justice enhancement and denying an acceptance of responsibility reduction, and (3) his sentence was substantively unreasonable. We examine each argument in its turn.

The Federal Rules of Criminal Procedure dictate that a defendant may withdraw a guilty plea before sentencing when he or she can provide "a fair and just reason" for the request. Fed. R. Crim. P. 11(d)(2)(B). We have identified some considerations that can help illuminate whether a particular request qualifies, but we have also recognized that the Rule's standard — inviting and even commanding a general inquiry into fairness and justice — is not so easily captured and compartmentalized. *See United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993). For this reason, we have explained, it always and ultimately lies "within the sound discretion of the district court to determine" on a case by case basis when the standard is and isn't met. *Id.* (quotation omitted). At the same time, we retain our traditional function to review the district court's decision for an abuse of discretion and to delineate appropriate rules regarding when "the defendant can [and cannot] show that the court acted unjustly or unfairly." *Id.* at 1572-73.

We exercise those functions here to offer one rule in light of the facts of this case. Whatever else may be said about its powers under Rule 11(d), we hold that a district court does not abuse its discretion in refusing a motion to withdraw where, as here, the defendant's request relies solely on a claim that his plea

wasn't knowing and voluntary and that claim is predicated on an intentional falsehood. Fairness and justice do not dictate that a party may compel any judicial action on the basis of a lie — let alone an action that would require the court, the government, as well as victims and witnesses to endure the significant cost, time, and all the other tribulations associated with a trial. Mistake or confusion, in the interests of fairness and justice, may merit more latitude from a court. But an intentional falsehood under oath about such a material matter as a plea agreement is not something any district court is forced to countenance.

Having said this much, it surely remains open to a defendant in Mr. Armendariz Soto's shoes to challenge the district court's factual finding that he intentionally lied. A district court's factual findings are, of course, reversible only if they are clearly in error. *See, e.g., Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985). But if Mr. Armendariz Soto could show that the district court clearly erred in finding that he told an intentional untruth rather than simply made a mistake or was confused, he might begin to make some headway toward showing (whether or not he would compel the conclusion) that the court abused its discretion in refusing relief from his plea.

Mr. Armendariz Soto tries to take up this challenge, but he does so unsuccessfully. He claims before us, as he did before the district court, that he entered his plea only because of promises his attorney made — or at least only because of promises he thought his attorney made. If he misunderstood the

lawyer, he says, it was only because of his lack of sophistication and familiarity with the legal system. The problem is that the district court rejected these arguments, noting that Mr. Armendariz Soto had "attempted to articulate his position in a thought-out and conceived manner, and clearly this was a willful intent to mislead the court." And the record before us contains no facts suggesting that this finding was erroneous, let alone clearly so. The record shows that Mr. Armendariz Soto's claim he entered his guilty plea unknowingly and involuntarily conflicts both with his own repeated statements to the district court during the plea colloquy and with the testimony of his attorney who confirmed that his client was properly advised of the consequences of his plea. Mr. Armendariz Soto's assertion that his attorney instructed him to answer "yes" to all the district court's questions is likewise contradicted by the attorney's testimony denying all this; the attorney adamantly testified that he conveyed accurately just the opposite.

The same problems confronting Mr. Armendariz Soto's Rule 11 argument also beset in his sentencing enhancement and reduction arguments. He argues that the district court erred when it applied a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. But by its terms that enhancement applies when the defendant "(A) willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . prosecution[] or sentencing of the instant offense of conviction, and (B) the obstructive conduct

related to . . . the defendant's offense of conviction and any relevant conduct."

And each of these conditions is satisfied when a defendant intentionally lies under

oath in an effort to scuttle a previously entered plea. After all, an intentional lie

in these circumstances is, by definition, an effort to impede the administration of

justice with respect to the prosecution and sentencing of the case, seeking as it

does to undo a conviction obtained pursuant to lawful procedures and to force the

proceedings to begin anew. And it necessarily relates directly to the defendant's

offense of conviction as it represents an effort to unring the bell on an already

agreed to conviction for that offense. *See also* § 3C1.1, cmt. n. 4(B) (indicating

that perjury provides a basis for the enhancement).

Neither can it come as much surprise that a defendant who receives an

obstruction of justice sentencing enhancement is generally ineligible for a

sentencing reduction predicated on an acceptance of responsibility. The whole

point of trying to obstruct justice, after all, is usually to *prevent* a full accounting

of one's criminal actions. For precisely this reason, the comments to the

guidelines explain that "[c]onduct resulting in an enhancement under § 3C1.1

(Obstructing or Impeding the Administration of Justice) ordinarily indicates that

the defendant has not accepted responsibility for his criminal conduct" and is

therefore ineligible for a sentencing reduction on this basis under U.S.S.G.

§ 3E1.1. In an abundance of caution the guidelines leave open the possibility that

there might be some situation where a defendant obstructs justice but is still eligible for an acceptance of responsibility reduction. But such a case, the comments tell us, will be the "extraordinary" one. § 3E1.1 cmt. n. 4.

Mr. Armendariz Soto's case is not the "extraordinary" one. He argues that he should receive an acceptance of responsibility reduction because he never asserted his innocence after pleading guilty, he never frivolously challenged relevant conduct during the sentencing process, and he did not engage in a continuing course of criminal activity after his arrest. And all of these things are true. But the district court found that, despite this, Mr. Armendariz Soto's effort to avoid the consequences of his plea agreement using intentional lies under oath demonstrated that he "ha[d] not accepted responsibility . . . [for] the extent of his involvement" in the criminal scheme or "come to grips with the reality of the role he played." Under our precedents, the question whether a defendant has or hasn't accepted responsibility for his criminal conduct is one of fact reviewed under the clearly erroneous standard. *United States v. Tom*, 494 F.3d 1277, 1281 (10th Cir. 2007). And, we hold, there's nothing clearly wrong about a finding that a defendant's intentional misrepresentation under oath to a court to avoid the consequences of his criminal actions demonstrates a lack of acceptance of responsibility that isn't fully cured or offset by his decision not to pursue other frivolous arguments or engage in still more criminal conduct.

Even if all this is so, Mr. Armendariz Soto argues that his sentence remains substantively unreasonable. Because his sentence falls within (at the bottom of) the properly-calculated guidelines range, however, it is entitled to a rebuttable presumption of reasonableness or rationality on review in this circuit. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1203 (10th Cir. 2007); *Gall v. United States*, 552 U.S. 38, 51 (2007). Mr. Armendariz Soto tries to carry his burden of overcoming that presumption and show that the district court's decision was nonetheless unreasonable or irrational (and so reversible) in essentially two different ways, but neither is persuasive.

First, Mr. Armendariz Soto claims that his sentence is excessive because the head of the drug trafficking conspiracy, Rene Garcia Rodriquez, received less prison time than he did. And it is certainly true that the law requires a sentencing court to avoid unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a). But rational reasons can exist for treating co-defendants differently at sentencing. A district court must, after all, consider the criminal history, degree of cooperation, specific offenses of conviction, and personal backgrounds of each of the defendants before it. *See id.* And what a court uncovers when considering these factors may well reasonably lead it to distinguish otherwise similarly situated individuals. This is such a case. Unlike Mr. Armendariz Soto, and as the district court found, Mr. Garcia Rodriquez extensively cooperated with the government. Neither is there any indication in

the record before this court that Mr. Garcia Rodriquez sought to obstruct justice or failed to accept responsibility for his conduct. Given all this, we are in no position to conclude (as we must to reverse on the basis of a putatively unwarranted disparity among co-defendants) that the district court lacked any rational reason to distinguish between the two men.

Second, Mr. Armendariz Soto contends that his sentence is substantively unreasonable in light of his age and lack of education or sophistication. The district court expressly considered these and other related points raised by the defense before announcing its sentence. But the court found them insufficient to warrant a sentence lower than the advisory guidelines range because of competing evidence showing that Mr. Armendariz Soto well understood his actions to be unlawful and was deeply involved in a significant drug trafficking conspiracy. Specifically, the court found that Mr. Armendariz Soto served as the "right hand man" to the head of the conspiracy and was "involved in the whole process." (ROA v. 3 at 27.) And "the process" involved the distribution of over 150 kilograms of cocaine and 1,000 kilograms of marijuana, as well as money laundering and firearms violations.

To be sure, weighing a defendant's personal background against the degree of his culpability, the need to deter and protect others, and the many other disparate considerations in § 3553(a) is no easy thing and hardly a task susceptible to a single right answer in every case. A choice is necessarily

involved.  It is a choice that calls for much humility and humanity, and is among the most difficult choices district judges must make.  But at least the district judge bears first-hand experience with the defendant, any co-defendants, victims, and other witnesses.  And it is precisely because of all this — because of the relative superiority of the district judge's vantage in making a choice where the considerations are so many, so varied, and so grave — that appellate courts can sensibly do no more than police the outer boundaries, reversing only when we can say a district court's substantive sentencing choice falls outside "the realm of the[] rationally available choices."  *See United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).  In this case we may be able to see how a different judge could have reached a different choice about the comparative importance of the defendant's age and experience versus the depth of his involvement in a large criminal scheme, but we are no less at a loss to see how we might say the choice this district judge made was an irrational one.

*Affirmed.*