**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LAURIE CHAPMAN,

      Defendant - Appellant.

No. 12-2113
(D.C. No. 1:11-CR-00904-JB-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

Laurie Chapman was on the take. At the New Mexico Department of Corrections she was responsible for selecting the best contractors to perform maintenance work for the State. Instead and bypassing any public bidding process, she awarded about $4 million in contracts to Omni Development over the course of three years — receiving about $237,000 in return from Anthony Moya, Omni's owner.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The scheme began unraveling when, remarkably, Mr. Moya was convicted for still another and unrelated embezzlement plot. Worried now her own arrangement would be found out, Ms. Chapman visited Mr. Moya in prison to concoct a cover story. Ms. Chapman suggested that, when asked, they claim the payments were personal loans from Mr. Moya and backed by her retirement accounts. But Ms. Chapman didn't know Mr. Moya was wearing a wire: the FBI recorded the entire conversation.

A few weeks later, the FBI executed a search warrant on Ms. Chapman's house and interviewed her boyfriend, Scott Smith. Ms. Chapman tried to convince Mr. Smith not to speak to the agents but speak to them he did, expressing his own suspicions about Ms. Chapman's arrangement with Mr. Moya. When the agents questioned Ms. Chapman, though, she stuck to the plan she had hatched with Mr. Moya. She insisted that the payments were a loan and her retirement account served as collateral. She also claimed to have a promissory note memorializing the arrangement, but she was unable to produce it and the search of her home turned up nothing. Later and in response to a grand jury subpoena she did produce a paper purporting to be a promissory note, but it wasn't signed by Mr. Moya and Mr. Moya claimed never to have seen the document.

Soon the grand jury indicted Ms. Chapman on thirty counts of soliciting bribes — one for each alleged payment from Omni — and Ms. Chapman pleaded

guilty. Turning to the question of her sentence, the district court pegged her recommended guidelines sentencing range as 151 to 188 months. But because the statutory maximum sentence for each bribery charge is ten years, the court took 120 months as the appropriate advisory guidelines sentence. From that figure, the court then varied downward by another fifty months and imposed only a 70-month term of imprisonment. Its thorough 33-page sentencing memorandum outlined the reasons for its variance and ultimate sentence.

Despite this favorable result Ms. Chapman appeals. She argues that her sentence was unreasonable because, in calculating her advisory guidelines range, the district court denied a two-level adjustment for acceptance of responsibility. Her problem is that the guidelines generally recommend denying an acceptance-of-responsibility adjustment to defendants who (like her) have received a sentencing enhancement for obstruction of justice. *See* United States Sentencing Guidelines Manual § 3E1.1 cmt. 4. Neither does Ms. Chapman contest the district court's finding that her efforts to prevent her boyfriend from speaking to investigators and to mask the bribes as a loan constituted obstruction of justice.

Still, Ms. Chapman protests, this is an "extraordinary" case in which the guidelines suggest both the obstruction and acceptance adjustments should apply. *See id.* In evaluating claims like hers, this court has indicated a sentencing court should "consider the totality of the circumstances, including, but not limited to (1) whether the obstruction of justice was an isolated incident or an on-going,

systematic effort to obstruct the prosecution, and (2) whether defendant voluntarily terminated his obstructive conduct and truthfully admitted the conduct comprising the offense of conviction." *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1280 (10th Cir. 2004). After following these directions, the district court found (among other things) that Ms. Chapman's obstruction was not isolated and that she never voluntarily terminated it.

Ms. Chapman contests these factual findings but we see no error, let alone the sort of clear error necessary to reverse. *See United States v. Soto*, 660 F.3d 1264, 1269 (10th Cir. 2011). Ms. Chapman's conduct was not isolated: she engaged in at least four separate acts of obstruction (concocting a cover story with Mr. Moya, repeating it to the FBI, encouraging her boyfriend not to cooperate, and sending the grand jury a phony promissory note). Neither did she voluntarily terminate her obstruction: she abandoned her efforts to conceal her wrongdoing only after the grand jury rejected her explanations and fictitious paperwork. That was not so much acceptance of responsibility as acceptance of the inevitable.

Trying a different tack, Ms. Chapman argues the district court impermissibly faulted her for failing to waive her right to appeal. Here, however, is what happened. In considering sentences imposed on similarly situated defendants, something statutorily authorized by 18 U.S.C. § 3553(a)(6), the district court discussed other recent New Mexico public corruption cases. Noting

that one (involving a Manny Aragon) ended with a sentence three months shorter than Ms. Chapman's, the court reasoned that the finality of the plea agreement in that case rendered the three month difference immaterial and the two sentences comparable. It is this analysis Ms. Chapman complains of.

We see no reversible error. This court has recognized in analogous circumstances that sentence disparities may be justified when they arise from the fact a defendant "cooperated with the government" by pleading guilty rather than taking the case to trial. *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008). This court has also said that aside from a "few exceptions" such as a defendant's race, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider" at sentencing. *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008) (internal quotation marks and alterations omitted). If an argument exists for distinguishing the logic of *Zapata* or for the notion that the absence of an appellate waiver amounts to one of the "few exceptions" to the sort of information the district court may consider at sentencing, it hasn't been presented to the court in this case and we will have to await its presentation in some other.

Neither, in any event, could any such argument prevail in this case because any possible error here was clearly harmless. *See* Fed. R. Crim. P. 52(a). Harmless because the absence of an appellate waiver was only one of many

reasons the district court gave for distinguishing Ms. Chapman's case from Mr. Aragon's; in turn, Mr. Aragon's case was itself only one of many cases the district court considered by way of comparison; and seeking a sentence in line with other comparable cases itself amounted to only one of eight reasons the court gave for choosing the 70-month sentence it did. Under our harmless error jurisprudence, remand for resentencing is not necessary where we are confident it would only "produce the same result." *United States v. Sherwin*, 271 F.3d 1231, 1235 (10th Cir. 2001). We have that confidence in this case.

Finally, Ms. Chapman claims her sentence is unreasonable because it (otherwise) differed too greatly from the sentences imposed in other public corruption cases, both in New Mexico and nationwide. But the district court assiduously discussed, sought to take account of, and control for the peculiarities of each case it sought to compare to Ms. Chapman's. Ms. Chapman may wish the weight the district court assigned to various factual differences in the various cases was different. And we readily acknowledge reasonable minds might assess these factual differences differently. But we simply cannot say the weight the district court did assign to them was unreasonable, as we must to reverse. *See United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge