In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2142

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN HACHA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 591 — **Rubén Castillo**, *Chief Judge.*

SUBMITTED JULY 24, 2013 — DECIDED AUGUST 23, 2013

Before POSNER, MANION, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Juan Hacha and his wife, Ixchel
Solano, extorted money from Solano's "friend" and former
boyfriend, Juan Carlos Tenorio. Hacha told Tenorio that he
had kidnapped Solano and her children and would harm
them (along with Tenorio and Tenorio's parents) unless
Tenorio coughed up thousands of dollars in ransom. After
paying Hacha nearly $55,000, Tenorio contacted the FBI,
which arrested Hacha after recording calls to Tenorio in

which Hacha pretended to have shot Solano in the leg, broken her fingers, and threatened to kill her and her children, and in which she was heard screaming in the background. Hacha and Solano were charged with conspiring to commit extortion, 18 U.S.C. § 371, and with extortion. 18 U.S.C. § 875(b). Both pleaded guilty. She was sentenced to 42 months in prison and he to 87 months, the bottom of his guidelines sentencing range.

He appeals, challenging the length of his sentence, but his appointed counsel has concluded that the appeal wholly lacks merit, and has therefore moved to withdraw from his representation of the appellant. *Anders v. California*, 386 U.S. 738 (1967). Hacha opposes the motion. See 7th Cir. R. 51(b) & Appendix I. The motion and opposition present several issues that are worth discussing for future reference (along with some others that are not), though none turns out to be a ground for denying counsel's motion.

One issue is the amount that Hacha extorted from Tenorio. Because the judge found that it exceeded $50,000 (by $4,834), he added two levels to Hacha's guidelines range. U.S.S.G. §§ 2B3.2(b)(2), 2B3.1(b)(7)(C). Hacha had disputed the loss amount in both a memorandum that he submitted at sentencing and a "defendant's version of the offense" that he had submitted to his probation officer (and that was included in the presentence report also submitted at sentencing), claiming that a large part of Tenorio's payments to him represented repayment of money that Solano had lent Tenorio before the extortion. Tenorio denied this account at the sentencing hearing, testifying that he had borrowed only $500 from Solano, and on only one occasion, and had repaid the loan a week later.

The dispute over the amount extorted is actually beside the point. The two-level guidelines enhancement in extortion cases is based on the greater of the amount demanded or the loss to the victim, U.S.S.G. § 2B3.2(b)(2), and Hacha had demanded $75,000, plus a new Chrysler, from Tenorio. And anyway extortionate methods such as threats of violence are not excused just because they are employed to collect a debt, e.g., *United States v. Brika*, 487 F.3d 450, 453–54 (6th Cir. 2007); *United States v. Teague*, 443 F.3d 1310, 1311–13 (10th Cir. 2006); see also *United States v. Escobar-Posado*, 112 F.3d 82, 82–83 (2d Cir. 1997) (per curiam), though such extortion is more commonly challenged under a provision of the federal criminal code that specifically forbids "collection of extensions of credit by extortionate means," 18 U.S.C. § 894, than under, as in this case, the general extortion statute.

The judge added another three offense levels to Hacha's base offense level on the ground of his "demonstrated ability to carry out" his threat to harm Solano and the others. U.S.S.G. § 2B3.2(b)(3)(B) provides that "if (i) the offense involved preparation to carry out a threat of (I) death; (II) serious bodily injury; or (III) kidnapping … *or (ii) the participant(s) otherwise demonstrated the ability to carry out a threat described in any of subdivisions (i)(I) through (i)(V)*, increase [the offense level] by 3 levels" (emphasis added).

The record contains threats against Solano, her children, Tenorio, and Tenorio's parents. But Solano was not a hostage; she was Hacha's accomplice. Her children were in no danger either. So far as she and the children were concerned, Hacha's only "demonstrated ability" was to enlist Tenorio's former girlfriend in a scheme of phony threats.

Some meaning must be given to the word "demonstrated" in the guideline, as otherwise quite harmless threats would earn the three-level enhancement. Most people have the physical ability to injure a person, but not all threats to injure earn the enhancement. But surprisingly we've found only one published appellate decision that deals with the meaning of "demonstrated ability" to carry out threats: *United States v. Mussayek*, 338 F.3d 245, 252–53 (3d Cir. 2003). We've found two other published decisions in which the enhancement was imposed, but in both the ability to carry out the threats was amply demonstrated. In *United States v. Alcala*, 352 F.3d 1153, 1154 (7th Cir. 2003), the defendant, in an attempt to collect a drug debt, entered an apartment, hit an occupant with his gun, and threatened to kill everyone present. In *United States v. Panaro*, 266 F.3d 939, 946 (9th Cir. 2001), the defendant and his coconspirators, intending to force a loan shark to give up his business, threatened him with a show of force at his auto shop. See also *United States v. Genua*, 273 Fed. App'x 8, 9 (2d Cir. 2008) ("The imposing size, demeanor, and reputation of the defendant and his co-conspirators, in the context of a turf battle between organized crime rings, communicated to the victim their ability and willingness to inflict serious bodily injury if the victim did not acquiesce to their demands.").

The defendant in *Mussayek* argued that since his threats had been made in the course of a sting, there was no way he could have carried them out. That was true, but, the court correctly found, irrelevant. The purpose of a sting is to arrange for the target to commit a crime (usually an attempt) in circumstances in which the police can prevent the target from doing any actual harm. In a common type of drug sting, for example, he's induced by a police informant or

undercover agent to attempt to rob a nonexistent stash house.

Hacha's brief in opposition to his lawyer's *Anders* motion challenges none of the evidence that he had had a demonstrated ability to carry out the threats that he uttered to Tenorio. Because he prepared the opposition without a lawyer's assistance we won't treat this omission as a waiver. *United States v. Wagner*, 103 F.3d 551, 552 (7th Cir. 1996); *United States v. Flores*, 632 F.3d 229, 233 (5th Cir. 2011); *United States v. Youla*, 241 F.3d 296, 301 (3d Cir. 2001). Anyway the lawyer raised the issue in the *Anders* brief, which is enough to preserve it. *United States v. Wagner*, *supra*, 103 F.3d at 553.

Although we discount the threats against Solano and her children, Hacha does appear to have had a demonstrated ability (within the meaning of the guideline) to carry out his threats against Tenorio and Tenorio's parents. He told Tenorio: "Then after I am done with them [Solano and her children], it will be you. I am going to keep you alive in a bag and in a box and I am going to take you to the D.F. [*Distrito Federal*—Mexico City.] Wherever your family is at, where your mom and your dad are at … I am going to make them suffer." We know that Hacha knew Tenorio's address and other personal information—he wrote it all down for another detainee at the jail in which Hacha was held awaiting trial, as we're about to see. Also Tenorio testified at Hacha's sentencing hearing that Hacha knew where Tenorio's parents lived in Mexico City: "He told me that my parents—my father's name and my mother's name … . He g[a]ve me the address and the color [of their house] and everything." The facts are close to the example of demonstrated ability in Application Note 6 to the extortion guideline: "a threat to kid-

nap a person accompanied by information showing study of that person's daily routine." Hacha's failure to deny demonstrated ability to carry out his threats, though not a waiver, corroborates the evidence of that ability.

He challenges the district judge's decision not to award him a sentencing discount for accepting responsibility for his criminal activity. See U.S.S.G. § 3E1.1. He admitted to having engaged in the activity and had cooperated with the FBI and the probation officer who prepared the presentence report. But he also obstructed justice. See U.S.S.G. § 3C1.1. That other detainee we mentioned testified that Hacha had offered to pay him to have Tenorio either intimidated into not testifying against Hacha or kidnapped and taken to Mexico. Hacha denied having attempted to prevent Tenorio from testifying, but faced with conflicting testimony the sentencing judge was entitled to believe the informant over the extortionist. The judge was ultimately swayed by a note that the informant had given the FBI. It was in Hacha's handwriting and contained Tenorio's name, cell phone number, and address, plus information about his employer.

Hacha had, however, abandoned his effort to obstruct justice before he pleaded guilty, and we said in *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir. 1993), that there can be "the act of obstruction or attempt to obstruct at time t, and the acceptance of responsibility at time t + 1. There is no logical or practical incompatibility, and no barrier in the language of the guidelines." But Hacha didn't *voluntarily* abandon his attempt to obstruct justice; the abandonment came only after the jail mate whom he had tasked with removing Tenorio as a prosecution witness reported the attempt to the FBI. "We do not reward defendants [with the acceptance of

responsibility discount] for failed attempts to obstruct justice." *United States v. Black*, 636 F.3d 893, 901 (7th Cir. 2011).

Moreover, Hacha told the judge at the hearing at which he changed his plea from not guilty to guilty that "we never received—we didn't receive a dollar that day or prior to that day from [Tenorio]," though the government had shown that he'd received nearly $55,000. Application Note 1(A) to U.S.S.G. § 3E1.1 states that "a defendant who falsely denies … relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." That's Hacha. See *United States v. Kumar*, 617 F.3d 612, 636 (2d Cir. 2010); *United States v. Lessner*, 498 F.3d 185, 201 (3d Cir. 2007).

In general a defendant who obstructs justice must, to obtain the discount nevertheless, show either that the obstruction was trivial, putting the government to no added expense (in *United States v. Buckley*, 192 F.3d 708, 711 (7th Cir. 1999), we gave the example of a defendant who lies about having possessed an illegal weapon but tenders a complete confession the next day), or that he had taken more than the routine steps that, in the absence of such obstruction, normally earn the discount. See, e.g., *United States v. Gonzalez*, 608 F.3d 1001, 1008 (7th Cir. 2010); *United States v. King*, 506 F.3d 532, 536 (7th Cir. 2007) (per curiam); *United States v. Soto*, 660 F.3d 1264, 1269 (10th Cir. 2011). The Eighth Circuit has identified a "number of non-exclusive factors" that justify a downward adjustment for acceptance of responsibility despite an obstruction of justice, such as whether the obstruction was a single incident early in the investigation, whether the defendant voluntarily abandoned the obstruction, and whether he admitted it. *United States v. Hutterer*,

706 F.3d 921, 925 (8th Cir. 2013); *United States v. Smith*, 665 F.3d 951, 957–58 (8th Cir. 2011).

Only the Ninth Circuit has gone so far as to hold that a routine showing of acceptance of responsibility can wipe out a nontrivial obstruction of justice: "we hold the relevant inquiry for determining if a case is an extraordinary case [warranting the acceptance of responsibility discount despite an obstruction of justice] is whether the defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility. Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis in original). The obstruction of justice in *Hopper* was not trivial. The defendant had "burned the negotiable instruments obtained and the disguises used in the robbery," and the day after an accomplice's arrest had "attempted to buy a false alibi for $20,000, and he hid robbery proceeds in a storage unit, later moving them to another unit." *Id*. at 381.

We have rejected the Ninth Circuit's position, remarking in *United States v. Buckley*, *supra*, 192 F.3d at 711, that "the fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation."

MOTION GRANTED AND APPEAL DISMISSED.