**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued, July 7, 2016[*]
Decided July 25, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1157

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v.* <br><br> JOSEPH FURANDO, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. <br><br> No. 1:13-cr-00189-SEB-TAB-4 <br><br> Sarah Evans Barker, <br>     *Judge*. |

**O R D E R**

This appeal is frivolous. Joseph Furando pleaded guilty to conspiracy, wire fraud, lying to federal investigators, and money laundering. At sentencing, he asked the district court to give him credit for acceptance of responsibility even though he had committed a number of crimes and threatened to kill prosecution witnesses after being indicted. The district court found that Furando had not accepted responsibility, and he challenges only that decision. We affirm Furando's sentence.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

From 2009 until 2012, two companies owned and operated by Furando bought more than 35 million gallons of inexpensive biodiesel, falsified documents to make the fuel appear eligible for tax credits through an EPA program, and resold the fuel to a coconspirator, E-Biofuels, LLC. E-Biofuels then marked up the price as if the fuel was eligible for the tax credits and sold it to other retailers, generating more than $55 million in profit. A grand jury charged Furando, his companies, and others with conspiracy, 18 U.S.C. § 371; wire fraud, 18 U.S.C. § 1343; false statements, 18 U.S.C. § 1001; and money laundering, 18 U.S.C. § 1957. Furando pleaded guilty to all 27 counts in which he was named.

At sentencing, witnesses testified to multiple instances of criminal conduct by Furando between the indictment and sentencing. One of Furando's coconspirators testified that he had threatened to make her "disappear" and hurt her family if she turned on him. The witness, who had been chief operating officer of Furando's biofuel companies, told EPA agents the truth about the scheme and her involvement. After he was indicted, Furando learned what she had told the agents and demanded that she retract her confession. When Furando learned that she instead had contacted the prosecutor saying that she had more information to share, Furando again told her to recant and offered to pay her attorney's fees if she wrote a retraction, which she did.

Another witness and former employee of Furando's testified that, while on pretrial release, he had physically and sexually assaulted her on several occasions, told her to lie at a court hearing about a physical altercation between Furando and the former COO, and forced her to help him frame the former COO for prostitution so that he could discredit her as a witness.

Even after Furando's bond was revoked and he was taken into custody, he continued planning crimes and attempting to silence witnesses against him. His cellmate testified that Furando had said he wanted to "make a couple people in his case disappear," provided personal details about the two female employees, and suggested poisoning them with a vial of liquid nicotine stored in his garage. Furando also asked his cellmate to distribute LSD for him and deposit the profits into his jail commissary account.

The probation officer calculated a total offense level of 38. He recommended adding 2 levels for obstruction of justice, *see* U.S.S.G. § 3C1.1, and did not recommend any deduction for acceptance of responsibility, *see id.* § 3E1.1. Furando objected to not

receiving a reduction for acceptance of responsibility and argued at sentencing that he should receive at least a 2-level reduction since his guilty pleas saved government resources and encouraged his codefendants to enter guilty pleas. Furando acknowledged that an upward adjustment for obstruction of justice generally is inconsistent with acceptance of responsibility, *see* U.S.S.G. § 3E1.1 n.4, but argued that, in light of that increase, refusing to give him credit for acceptance of responsibility would be "punishing him twice" for the obstructive conduct. The government countered that pleading guilty was "not enough" given Furando's pretrial misconduct.

The district court did not reduce Furando's offense level, reasoning that pleading guilty wasn't sufficient by itself to demonstrate acceptance of responsibility. The court rejected giving "some sort of reward" for Furando's guilty pleas, calling them "almost another form of fraud" given "all this other stuff going on." The court calculated an imprisonment range of 235 to 293 months and imposed a 240-month sentence.

On appeal, Furando challenges only the district court's decision not to reduce his offense level for acceptance of responsibility. He urges us to conclude that the reduction should have been granted because (1) his guilty pleas saved judicial resources, (2) he did not wait until the "last minute" to plead guilty, (3) he did not contest the loss calculation or other collateral issues, (4) he twice offered to cooperate with the government, (5) he acknowledged his criminal actions at the sentencing hearing, (6) his misconduct while on pretrial release was (by his account) unrelated to the pending criminal case, and (7) he acknowledges a need for psychological counseling.

Furando does not flesh out his argument much beyond providing this list. But it doesn't matter—the district court did not err in declining to reduce his offense level for accepting responsibility. A defendant who pleads guilty is not entitled to an adjustment for accepting responsibility as a matter of right, U.S.S.G. § 3E1.1 n.3, and "a defendant who has obstructed justice is presumed not to have accepted responsibility," *United States v. Buckley*, 192 F.3d 708, 711 (7th Cir. 1999) (citing U.S.S.G. § 3E1.1 n.4); *see also United States v. Bennett*, 708 F.3d 879, 893 (7th Cir. 2013). That presumption can be rebutted in "extraordinary circumstances," but we have concluded that simply pleading guilty and refraining from further obstruction of justice is not sufficient. *See Buckley*, 192 F.3d at 711 ("The fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation."). Rather, a defendant must show either that the obstruction was trivial (causing no extra expense to the government) or that he made up

for his obstruction by taking more than the routine steps that normally earn the discount. *United States v. Hacha*, 727 F.3d 815, 818 (7th Cir. 2013).

Furando did not show that his acceptance was exceptional. Furando's guilty pleas do not demonstrate anything more than the "routine steps" that typically warrant an acceptance-of-responsibility discount. *See Bennett*, 708 F.3d at 893 (upholding denial of § 3E1.1 reduction to defendant who had jumped bail and then dealt drugs for next four years before pleading guilty). His other pretrial conduct far from "made up" for his obstruction of justice: He continued committing violent physical assaults while on pretrial release and, while detained, plotted to kill federal witnesses and sell drugs.

AFFIRMED.